Tijen HARCAR, Appellee

v.

Dogan Talha HARCAR, Appellant.

Superior Court of Pennsylvania.

Argued June 10, 2009.

Filed Oct. 21, 2009.

Joseph M. Spratt, Bridgewater, for appellant.

BEFORE: MUSMANNO, DONOHUE and SHOGAN, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, Dogan Talha Harcar ("Father"), appeals from the order dated October 7, 2008, and entered October 9, 2008, finding Appellee, Tijen Harcar ("Mother"), in contempt of the trial court's orders entered on June 2, 2006 and September 5, 2006 by remaining in the Republic of Turkey with the parties' son, Taha Murat Harcar ("Child"). The trial court declined to impose any sanctions on Mother. The trial court also ruled that Beaver County was an inconvenient forum under 23 Pa.C.S.A. § 5427, and directed that any further child custody proceedings should be instituted in the Republic of Turkey. After careful review, we affirm to the extent that the trial court held Mother in contempt. To the extent that it refused to impose any sanction, we reverse and remand. To the extent that the trial court declined to exercise jurisdiction in the future, we vacate.

¶ 2 Father and Mother were both natives of the Republic of Turkey who initially immigrated to Canada. Child was born in Canada in September of 1999. Father and Mother then moved to Beaver County, Pennsylvania, where both held teaching positions at The Pennsylvania State University, Beaver Campus. During the nine-month school year, the parties resided in Monaca, Beaver County, Pennsylvania but, in the summer, they lived in the Republic of Turkey.

¶ 3 In March of 2006, Mother filed a complaint in custody in the Court of Common Pleas of Beaver County, seeking custody of Child. On March 29, 2006, the trial court issued an order awarding Mother temporary custody of Child pending the conciliation conference at Juvenile Services. On May 1, 2006, the trial court entered a proposed order, awarding Mother primary physical custody of Child and Father partial physical custody. Neither party was permitted to remove Child from the United States without written and verbal consent of the other party. The order further provided that if "a party with primary physical custody or shared physical custody desires to relocate outside of Beaver County, that party must [obtain approval in the trial court] unless the other party consents to the relocation in writing." *See* Proposed Order, 5/1/06, at III, 4. Although the parties had the right to file exceptions, neither filed exceptions.

¶ 4 On June 2, 2006, Mother filed a motion for special relief, requesting permission to take Child to the Republic of Turkey for summer vacation. On June 2, 2006, the trial court in Beaver County entered an order providing that Mother could take Child to the Republic of Turkey on June 12, 2006 but that she must return Child to Beaver County on August 18, 2006. On June 12, 2006, Mother took Child to Turkey. Subsequently, Mother sought a divorce and custody of Child in Turkey in June of 2006. On June 27, 2006, Mother also filed a petition in the trial court in Beaver County seeking to relocate to Turkey with Child. Father did not file a response.

¶ 5 On August 29, 2006, Father filed a petition for civil contempt in the trial court

in Beaver County, seeking to hold Mother in contempt of the June 2, 2006 order for failing to return Child to Beaver County on August 18, 2006. Also on August 29, 2006, the trial court issued a rule returnable upon Mother, directing Mother to show cause why she was not in contempt, and set a hearing date for September 1, 2006. Mother did not file any responsive pleading to Father's petition for civil contempt. Instead, on August 30, 2006, she filed in the trial court in Beaver County a motion to withdraw her relocation petition. Mother asserted that, on June 28, 2006, the trial court in Turkey, by Judge Ali Sadik Tastepe, had assumed jurisdiction over the child custody matter and had ordered that Child should remain in Turkey with Mother. Father did not file a response to Mother's motion to withdraw her relocation petition. On August 30, 2006, the trial court in Beaver County entered an order granting Mother's motion and stating that the hearing on Father's contempt petition, scheduled for September 1, 2006, was not cancelled. However, the record reflects the trial court in Beaver County did not hold a hearing on that date.

¶ 6 Thereafter, Father filed a petition for special relief, alleging that Mother failed to return Child to Beaver County on August 18, 2006, in accordance with the order entered on June 2, 2006. Father alleged that Mother had filed for divorce in Turkey, and that she did not intend to return to Beaver County. Mother filed a response to Father's petition for special relief, asserting that she did not return Child to Beaver County because she did not want to violate the order issued by the trial court in Turkey on June 28, 2006. On September 5, 2006, the trial court in Beaver County entered an Order directing Mother to return Child to Beaver County. Mother failed to comply. On July 31, 2007, the 4th Family Court of Izmir reversed the order entered in the trial court in Turkey in June of 2006. Mother filed an appeal from that order in Turkey.[1]

¶ 7 On March 4, 2008, Father filed another civil contempt petition, requesting the trial court in Beaver County to hold Mother in contempt for failure to comply with the trial court's June 2, 2006 and September 5, 2006 orders by failing to return Child to Beaver County. The trial court in Beaver County issued a rule returnable on Mother, directing her to show cause why she was not in contempt of the trial court's June 2, 2006 and September 5, 2006 orders. Further, the trial court scheduled a hearing for May 13, 2008, and directed Mother to appear in person.

¶ 8 On March 14, 2008, Attorney Robert Banks filed a motion in the trial court in Beaver County requesting Mother's then counsel, Attorney Rebecca James, be granted permission to withdraw. On April 18, 2008, the trial court denied the request. On April 28, 2008, the trial court granted Mother permission to testify via telephone at the hearing. On May 1, 2008, the trial court entered an order permitting Mother to participate in and testify by telephone with regard to the contempt hearing scheduled to occur on May 13, 2008. In this order, the trial court provided notice

---

**1.** At the hearing on May 13, 2008, Mother indicated that her case was still on appeal in Turkey. N.T., 5/13/08, at 15–16. The record establishes that on February 20, 2008, the Supreme Court of Appeals in Turkey had rejected the June 28, 2006 order of its trial court pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and had remanded the case back to the Turkish trial court. Petitioner's Exhibit 3, Supreme Court of Appeals 2nd Circuit Decree, 2/20/08. The record further reflects that on June 9, 2008, the Supreme Court of Appeals in Turkey rejected Mother's application for correction of its February 20, 2008 decree. Petitioner's Exhibit 4, Supreme Court of Appeals 2nd Circuit Decree, 6/9/08.

to Mother of her right to counsel and the potential consequences of being held in contempt.

¶ 9 On May 13, 2008 and August 11, 2008, the trial court in Beaver County held hearings on Father's contempt· petition. During the first hearing, Mother advised the trial court that she wished to proceed *pro se.* The trial court appointed Attorney Banks to serve as stand-by counsel. At the hearing on Father's contempt petition held on May 13, 2008, Father testified in person, and Mother testified via telephone. Mother continued her testimony by telephone on August 11, 2008.

¶ 10 In an order dated October 7, 2008, and entered October 9, 2008, the trial court in Beaver County found Mother in contempt of the trial court's June 2, 2006 and September 5, 2006 orders, but did not impose any sanction. The trial court observed that, as almost two years had passed since Mother went to Turkey, much of the evidence regarding the best interests of Child was now located in Turkey. The trial court further stated that Father was then living in Turkey on an educational sabbatical for approximately one year, with the possibility of going to the State of Georgia in the former USSR. The trial court reasoned that it would not be in Child's best interests to impose as a sanction on Mother that she should have to return Child to Beaver County when Father was not living in Beaver County at that time. The trial court acknowledged that the 4th Family Court of Izmir had issued a decision at the end of July of

2007, in which it reversed the order entered by Judge Ali Sadik Tastepe in the trial court in Turkey. However, the Pennsylvania trial court determined that Beaver County had become an inconvenient forum under 23 Pa.C.S.A. 5427 and directed that any further custody proceedings should occur in the Republic of Turkey, as the significant evidence of what is in the best interests of Child was located in the Republic of Turkey.

¶ 11 Father filed a notice of appeal on November 6, 2008. On November 12, 2008, the trial court entered an order directing Father to file a Concise Statement of Errors Complained of on Appeal, pursuant to Pa.R.A.P.1925(b), within twenty-one days. The trial court's docket reflects that the trial court issued notice of this Rule 1925(b) order, pursuant to Pa.R.C.P..236, on November 13, 2008. Father timely filed his Rule 1925(b) Statement on December 1, 2008.[2]

¶ 12 On appeal, Father raises the following three issues:

I. Did the trial court abuse its discretion and commit an error of law when, presented only with a petition for contempt and no request for modification was made, it sua sponte modified the controlling court orders?

II. Did the trial court committ [sic] an error of law and abuse its discretion when[,] after finding [Mother] in contempt of the Beaver County trial court's orders of June 2, 2006 and September 5, 2006[, it] imposed no sanctions upon her;

---

**2.** On August 28, 2009, we granted Father's motion for allowance of post-submission communication, directing him to immediately supplement the certified record in this matter with subsequent orders issued by the courts in the Republic of Turkey, which ordered the return of Child to his "U.S. resident father." The certified record now includes an order dated October 14, 2008, from the 4th Family Court of Izmir, which indicated the court was

acting subsequent to the February 20, 2008 Supreme Court of Appeals decision. In the October 14, 2008 order, the 4th Family Court of Izmir ordered that Child be returned to Father. The record also includes an order, issued on June 8, 2009, from the Supreme Court of Appeals, which approved the October 14, 2008 decision by the 4th Family Court of Izmir.

but rather rewarded her ongoing contempt by permitting the minor child to remain in the Republic of Turkey even though neither of [the] Pennsylvania court orders had been modified or vacated and the Supreme Court of the Republic of Turkey refused to exercise jurisdiction over this case?

III. Did the trial court commit an error of law and abuse its discretion by failing to exercise either the subject matter jurisdiction or exclusive continuing jurisdiction over this case once the Supreme Court of the Republic of Turkey declined to exercise jurisdiction?

Father's Brief at 4.

¶ 13 Father initially complains that, in declining to require Mother to return Child to Beaver County and permitting Mother to remain in Turkey in possession of Child, the trial court in Beaver County essentially modified its prior orders regarding custody. Father relies on *Langendorfer v. Spearman*, 797 A.2d 303 (Pa.Super.2002), to support his argument that the trial court could not modify its prior custody order in a contempt proceeding without a petition for modification of custody before the court. Father also contends that the trial court in Beaver County abused its discretion by holding Mother in contempt and refusing to impose any sanction on her for the contempt. In support of his argument, Father relies on *Goodman v. Goodman*, 383 Pa.Super. 374, 556 A.2d 1379 (1989). Finally, on the basis of the decision in *Goodman*, Father argues that the trial court in Beaver County abused its discretion in failing to exercise jurisdiction over this case after the Supreme Court of the Republic of Turkey declined to exercise jurisdiction. Mother did not file a brief on appeal.

¶ 14 This Court has explained our standard of review for a civil contempt order as follows:

When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. *Hyle v. Hyle*, 868 A.2d 601 (Pa.Super.2005), *appeal denied*, 586 Pa. 727, 890 A.2d 1059 (2005). The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. *Id.* To be in contempt, a party must have violated a court Order, and the complaining party must satisfy that burden by a preponderance of the evidence. *Id.*

Attorney fees may be assessed as a sanction for the contemnor's refusal to comply with a court Order, causing the innocent party to incur fees in an effort to obtain what was rightfully his. *See* 42 Pa.C.S.A. § 2503, **Right of participants to receive counsel fees;** *Rhoades v. Pryce*, 874 A.2d 148 (Pa.Super.2005), *appeal denied*, 587 Pa. 724, 899 A.2d 1124 (2006), (holding attorney fees may be awarded as a sanction to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court Order); *see also Goodman v. Goodman*, 383 Pa.Super. 374, 556 A.2d 1379, *appeal denied*, 523 Pa. 642, 565 A.2d 1167 (1989).

*Hopkins v. Byes*, 954 A.2d 654, 655–656 (Pa.Super.2008).

¶ 15 In *Langendorfer*, this Court stated that a party may be held in contempt for willfully failing to comply with a visitation or partial custody order, as long as the procedures outlined in *Crislip v. Harshman*, 243 Pa.Super. 349, 365 A.2d 1260 (1976), are followed. *Langendorfer*, 797 A.2d at 308. The five elements deemed essential to a civil contempt adjudication are: (1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a

hearing on the contempt citation; and (5) an adjudication. *Id.* at 308 n. 7 (quoting *Cahalin v. Goodman*, 280 Pa.Super. 228, 421 A.2d 696, 698 (1980)). "Fulfillment of all five factors is not mandated, however." *Wood v. Geisenhemer–Shaulis*, 827 A.2d 1204, 1208 (Pa.Super.2003). "[T]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." *Schnabel Assoc., Inc. v. Bldg. and Const. Trades Council*, 338 Pa.Super. 376, 487 A.2d 1327, 1334 (1985). Mother does not challenge the satisfaction of the five procedural prerequisites.

¶ 16 Further, with regard to contempt orders, this Court has stated:

> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellant [sic] court must place great reliance upon the discretion of the trial judge. On appeal from a court order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Langendorfer*, 797 A.2d at 307–308 (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super.2001)). In order to sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa.Super.2006).

¶ 17 Here, the trial court in Beaver County determined the following from the testimony offered at the contempt hearings:

> At the contempt [hearings], [M]other testified that she received the [c]ourt [o]rder of June 2, 2006 and that her counsel explained to her the terms of the [c]ourt [o]rder. Mother acknowledged to the [c]ourt that she knew that she was to return to [sic] the minor child to Beaver County on August 18, 2006. In the contempt proceedings, [M]other testified that she was a victim of domestic abuse. During much of her testimony, [M]other told the [c]ourt of inadequate living conditions that she and her child had to live under in Pennsylvania. Mother repeatedly told the [c]ourt that she feared that [F]ather would take the parties['] minor son to Turkey and not allow her to see her son. During the contempt hearings, [M]other also acknowledged that she had received the September 5, 2006 [c]ourt [o]rder of Judge James directing her to return the parties['] minor child to Beaver County. [Mother] told the [c]ourt that she had received the [c]ourt order from her [c]ounsel, who explained its terms to her. At the contempt hearings, [M]other argued that she filed for divorce in Turkey and the Turkey Court entered an order prohibiting her from removing the minor child from the Republic of Turkey. Mother alleged that she was acting under the advise [sic] of counsel, [sic] when she failed to return the minor child from the Republic of Turkey to Beaver County. However, [M]other did not introduce any testimony from counsel to establish these allegations. Furthermore, the June 28, 2006 Court Order of Judge Ali Sadik Tastepe of the IKOY 1st Family Court of the Republic of Turkey, [sic] only provided that [M]other shall possess guardianship rights for the child while he stays in Turkey, and banned taking the child

abroad without the consent of [Mother]. It was clear to the [trial court] that [M]other knowingly and voluntarily violated the [trial court's] orders of June 2, 2006 and September 5, 2006, because of her dissatisfaction with the domestic situation with [F]ather.

Trial Court Opinion, 12/29/08, at 10–11. Accordingly, the trial court in Beaver County found that Mother acted with wrongful intent in violating the trial court's June 2, 2006 and September 5, 2006 orders.

¶ 18 "[T]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." *Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super.2001) (citing *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa.Super.1999)). As we find that the record supports the trial court's credibility assessment, we will not disturb the trial court's decision that Mother's testimony that she was precluded from returning Child to Beaver County in compliance with the trial court's June 2, 2006 and September 5, 2006 orders was not credible. *See Garr, supra.* The trial court properly held Mother in contempt of its June 2, 2006 and September 5, 2006 orders.

¶ 19 Next, we address Father's assertion that the trial court in Beaver County improperly modified its prior custody orders. In *Lachat v. Hinchcliffe*, 769 A.2d 481, 488–489 (Pa.Super.2001), we explained that the focus of a contempt hearing is very narrow, and is confined to a consideration of whether the specific order before the court has been violated. The trial court's opinion reflects that the trial court focused on the question of whether Mother was in contempt of the trial court's prior orders.

¶ 20 As previously mentioned, Father relies upon *Langendorfer* to bolster his allegation that the trial court in Beaver County erred in modifying the custody orders. However, the situation in the instant appeal is distinguishable from the scenario in *Langendorfer*. In *Langendorfer*, the trial court granted the mother's petition for contempt, and also ordered a change to the legal and primary physical custody of the parties' child from the father to the mother. The panel of this Court found that the father's constitutional guarantee to due process had been violated by the trial court's actions, as the father had no notice that custody would be at issue in the proceedings. In the present appeal, the trial court did not modify its existing custody order; it simply declined to order Mother to return Child to Beaver County. Thus, we reject Father's assertion that the trial court in Beaver County modified its prior custody order.

¶ 21 Father's second issue on appeal challenges the trial court's refusal to impose a sanction on Mother. In analyzing this issue, we find this Court's prior decision in *Goodman* to be instructive. The trial court in *Goodman*[3] had entered a temporary order awarding primary physical custody of the parties' child to the appellant-mother, who was a physician in the United States Army. On June 27, 1985, the appellee-father obtained an order from the trial court placing physical custody of the child with the father based on the mother's intention to remove the child from the jurisdiction of the trial court. On May 15, 1985, however, the mother had removed the child from Pennsylvania and had taken the child to the Federal Republic of West Germany. In fact, the mother had removed the child two days following

---

**3.** The reference to "the trial court" in *Goodman* is used to refer to both the Courts of Common Pleas in Philadelphia and Erie Counties since proceedings were ongoing in both counties.

her assurance to the trial court that she would return to court on July 3, 1985 for further hearings. When the mother failed to attend the hearing on July 3, 1985, the trial court found her in contempt and imposed fines on her. On October 9, 1985, another custody hearing which the mother failed to attend was held. The trial court then entered an order awarding both legal and physical custody to the father.

¶ 22 The trial court ultimately found the mother in contempt by her continuous refusal to comply with the trial court's June 27, 1985, July 3, 1985, and October 9, 1985 orders, and issued bench warrants for her arrest. The trial court further directed that the child should be removed from the physical possession of the mother and returned to the father in Pennsylvania. In the meantime, the trial court was also made aware of the facts that the mother had filed a petition in West Germany seeking custody of the child in April of 1985, prior to her arrival there in May of 1985.

¶ 23 The panel in *Goodman* explained that, in Pennsylvania, the jurisdiction of custody matters is governed by the Uniform Child Custody Jurisdiction Act ("UCCJA"), 42 Pa.C.S.A. §§ 5341–5366 (now repealed and replaced by 23 Pa.C.S.A. §§ 5401–5482). The panel in *Goodman* stated:

> The manifold purposes of the UCCJA, as embodied in section 5342(a)(1)-(8), include avoidance of jurisdictional conflicts; promotion of cooperation between "interested" jurisdictions; assurance of custody litigation in the forum having the greatest nexus with the case; and deterrence of abductions. *See id.* § 5342[.]

> The list contains overlaps, [but] the important features boil down to a conviction that *the instability that results from child-snatching and forum shopping is harmful to children, and that the court system should not condone the unilateral decision of one parent in helping himself or herself by attaining the physical possession of the child and seeking the forum most likely to award permanent custody to that parent.*

*Goodman*, 556 A.2d at 1384 (case citations omitted) (emphasis in original).

¶ 24 The panel in *Goodman* continued by stating:

> Any parent who abducts his or her child and goes forum shopping, therefore, has a heavy burden to overcome in proving that the court issuing the original decree was not acting in the child's best interest. The text of the statute itself indicates, and our courts have held, that its provisions apply not only interstate, *id.* §§ 5342, 5347, but also intrastate, *id.* § 5364, and internationally, *id.* § 5365.[4] The Act is not a " 'reciprocal' law and is in full operation in each state regardless of its enactment in other states."

Although we have not previously elucidated the analysis for determining whether to exercise subject matter jurisdiction in a situation involving a potential conflict of jurisdictions, our courts have engaged in a two-pronged balancing test. Naturally, the first prong requires an ascertainment of the basis for our jurisdiction. *See* 42 Pa.C.S.A. § 5344.[5] The UCCJA provides the standard for determining whether the necessary predicate for jurisdiction exists. If jurisdiction is properly laid in

---

**4.** In the present enactment of the UCCJA, there is no replacement for § 5342, § 5347 is replaced at 23 Pa.C.S.A. § 5426, § 5364 is replaced at 23 Pa.C.S.A. § 5471, and § 5365 is replaced at 23 Pa.C.S.A. § 5405.

**5.** In the present enactment of the UCCJA, § 5344 is replaced at 23 Pa.C.S.A. §§ 5421, 5423, and 5424.

Pennsylvania, we then proceed to the second prong, which focuses on the restrictions on the exercise of our authority. This second step is necessitated by the legislative policy of circumscribing jurisdiction in custody cases rather than proliferating it. With respect to this latter prong, we must determine the basis for the jurisdiction of the competing forum, the priority in time in which the actions were filed, and the applicability of equitable doctrines, such as unclean hands.

*Goodman,* 556 A.2d at 1385 (case citations omitted; footnotes added).

¶ 25 The Court in *Goodman* continued to set forth the situations in which a court may properly decline to exercise jurisdiction. In the first situation, the trial court must abstain from exercising jurisdiction because another forum has jurisdictional priority. This is known as the "first in time rule," as expressed in 42 Pa.C.S.A. § 5347 (now 23 Pa.C.S.A. § 5426), and is mandatory. *Goodman,* 556 A.2d at 1387. The other section, set forth at 42 Pa.C.S.A. § 5348 (now 23 Pa.C.S.A. § 5427), is a permissive declination provision. The Court in *Goodman* stated:

> An action is pending from its commencement to its final determination on appeal, or until the time for appeal has expired. Because " 'the policy against simultaneous custody proceedings is so strong' ... courts should refrain from exercising jurisdiction to further the purposes of the Act." Consequently, as long as one forum is exercising jurisdiction, there is no concurrent jurisdiction to modify a decree. [*See* ] 42 Pa.C.S.A. § 5355[ [6] ] ("a court of this Commonwealth shall not modify that decree unless: (1) it appears to the court of this Commonwealth that the court which rendered the decree does not now have jurisdiction under the jurisdictional pre-

requisites substantially in accordance with this subchapter or has declined to assume jurisdiction to modify the decree; and (2) the court of this Commonwealth has jurisdiction"). Importantly, the first in time rule applies to international custody disputes. We finally note that this provision is symmetrical, that is we have both declined, and exercised jurisdiction pursuant to it.

> The key distinction between the above-mentioned mandatory declination provision, 42 Pa.C.S.A. § 5347, and section 5348, which is permissive, is that no other forum is exercising jurisdiction. Thus, if two forums have colorable bases for exercising jurisdiction, a court is permitted to decline "its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case" and that another court is a "more appropriate forum." Like section 5347, section 5348 is applicable to custody battles crossing international boundaries.

*Goodman,* 556 A.2d at 1387–1388 (case citations and original footnote omitted; footnote added).

¶ 26 With regard to an additional basis on which a court may decline to exercise its jurisdiction, formerly set forth at 42 Pa.C.S.A. § 5349(a) (now section 5428), the panel in *Goodman* stated:

> "Abductions and reabductions of children remains [sic] perhaps the most serious problem confronting practitioners and the courts, not to mention the child, the innocent victim of the ongoing struggle between the embattled and embittered parents." With this concern in mind, our legislature has provided another ground on which a court may abstain: if the petitioner has "wrongfully taken the child to another state or has engaged in conduct intending to benefit

**6.** In the present enactment of the UCCJA, § 5355 is replaced at 23 Pa.C.S.A. § 5423.

his position in a custody hearing." 42 Pa.C.S.A. § 5349(a). Additionally, we note that this provision clearly reflects one of the oldest doctrines of equity, i.e. "unclean hands." Based on section 5349, we have both declined jurisdiction, and exercised it. According to the UCCJA's commentators, the foregoing provision also is applicable to international custody disputes.

*Goodman,* 556 A.2d at 1388 (certain citations omitted).

¶ 27 The panel in *Goodman* found that the court in West Germany had apparently awarded sole custody of the child to the mother. The trial court also found that the father had no notice, and that he had appealed the decision in West Germany. The panel held that, as the father was not afforded his guarantee to due process, the trial court was not bound to recognize the West German orders. *Goodman,* 556 A.2d at 1388 (citing 42 Pa.C.S.A. § 5365). Additionally, the panel concluded that the proceedings were instituted in West Germany while the Commonwealth of Pennsylvania was exercising its jurisdiction. The panel reasoned that the court in West Germany should not have proceeded on the mother's petition under the "first in time rule." *Goodman,* 556 A.2d at 1389 (citing former 42 Pa.C.S.A. § 5347). The panel condemned the mother's "forum shopping" as egregious. *Id.* The panel found that the October 9, 1985 order was validly entered and was never modified. *Id.* Moreover, the panel in *Goodman* held that the trial court had not abused its discretion in imposing counsel fees as part of the sanction on the mother, as the sanction was coercive and compensatory, and not punitive. *Id.* at 1391 n. 8.

¶ 28 In the instant case, the trial court in Beaver County explained its decision not to impose sanctions on Mother as being in Child's best interest. The trial court provided the following reasoning for its decision not to impose any sanction on Mother for her contempt:

[Child] is a Turkey national, who has now been raised for over 1–1/12 [sic] years in his country and culture. How would uprooting the minor child from his country affect his physical, moral and intellectual well being? Father did not present any evidence of how his request for contempt would affect the minor child. In this proceeding, [F]ather did not file any motion for modification requesting physical custody of his son or change of his partial custody visitation rights. Thus, the [trial court] did not have any authority to modify the existing Court Order in the contempt action. Realistically, it was impractical to expect the minor child would travel from Turkey to Beaver County every other weekend.

At the contempt hearing, [F]ather requested the [trial court] to direct [M]other to move back to the United States with the child within 6 months. Then he requested one year. (See: T.P. 51, ln. 10, ln. 23). However, [F]ather did not present any evidence concerning whether it was possible for [M]other or son to return to the United States. No evidence was presented to show the status of the mother or minor child's passport. Any enforcement of the [c]ourt's Contempt Order would ultimately have to be enforced under the Hague Convention. Where only visitation or right of access are [sic] violated, Article 21 of the Hague Convention may apply to serve an effective exercise of right of access in Turkey.

A further dilemma became apparent to the [c]ourt at the second hearing on [F]ather's contempt petition. At this hearing, [F]ather told the [c]ourt that he was on sabbatical in Europe for one year from August 2008 (T.P. 9). In August 2008, [F]ather was working at the same university that [M]other worked at in

Turkey. Father told the [c]ourt that he would be living there for the next 6 months. (T.P. 27). However, [F]ather told the [c]ourt that he had several offers to teach in universities in Europe including the Republic of Georgia [in the former U.S.S.R.] for work. (T.P. 36). This further illustrated to the [c]ourt that it was unrealistic at that time to provide a practical contempt remedy for exercising partial custody visitation rights in Beaver County, PA.

Trial Court Opinion, 12/29/08, at 11–12.

██ ¶ 29 It is our conclusion that the trial court in Beaver County abused its discretion in refusing to impose any sanction on Mother for her flagrant contempt of the trial court's June 2, 2006 and September 5, 2006 orders directing her to return Child to Beaver County by August 18, 2006. The trial court's reasoning for refusing to impose a sanction on Mother, that she had taken Child with her to the Republic of Turkey, where she and Child had then lived for more than a year and a half, actually permitted Mother to engage in disobedience of the custody orders of this Commonwealth. The trial court in this Commonwealth had exercised its jurisdiction before Mother had fled to the Republic of Turkey with Child to engage the parties in a custody battle there. This is precisely the type of behavior which this Court in *Goodman* stated that we will not condone. Thus, in failing to impose any sanction, the trial court in Beaver County committed an abuse of discretion by misapplying the law and exercising its discretion without reason. *See Hyle*, 868 A.2d at 604. Consequently, we must reverse the trial court's order to the extent that it did not impose a sanction on Mother. Accordingly, we remand the case to the trial court for the imposition of the appropriate sanction(s).

¶ 30 Finally, we address the jurisdictional issue raised by Father. The trial court's October 7, 2008 order clearly stated the trial court found that Beaver County, Pennsylvania, was an inconvenient forum under 23 Pa.C.S.A. § 5427. In the order, the trial court in Beaver County directed that any further child custody proceedings should be instituted in the child's home country of Turkey. The trial court reasoned as follows:

For nearly 2–½ years, [Child] a Turkish national, has lived with his Mother in the Republic of Turkey. During the parties' marriage, both [M]other and [F]ather routinely returned to their former home country during the summer months. Father is currently on sabbatical for one year and is residing in Turkey. Significant evidence of what is in the best interest of the minor child is now located in the Republic of Turkey. . . . The Turkey Court's [sic] now sit in a unique position of having all the parties in its [sic] jurisdiction.

Trial Court Opinion, 12/29/08, at 15–16.

¶ 31 In its opinion, the trial court in Beaver County claimed that its statement regarding its future exercise of jurisdiction over the custody dispute should be considered to be *dicta*. *Id.* at 15. The trial court explained that it was reacting to the statement of Father's counsel at the hearing that, if the trial court were to hold Mother in contempt, Father intended to file a petition for modification of custody in the future. *Id.*

██ ¶ 32 In *Entertainment & Development v. Philadelphia*, 594 Pa. 468, 480, 937 A.2d 385, 392 (2007), our Supreme Court explained that subject matter jurisdiction concerns the power of a court to hear a claim, while the doctrine of ripeness concerns the timing of a court['s] intervention in litigation. Pursuant to the doctrine of ripeness, our Supreme Court instructed that the courts should not give answers to academic questions or render advisory

opinions, or make decisions based on assertions as to hypothetical events that might occur in the future. *Id.* As the issue of any future jurisdiction was not presently before the trial court in Beaver County as part of Father's contempt petition, the question of the trial court's future jurisdiction was not ripe for the trial court's decision. Thus, the trial court erred in including this jurisdictional provision. Accordingly, we vacate that provision of the order.

¶ 33 Order affirmed to the extent that the trial court held Mother in contempt; reversed and remanded for further proceedings to the extent that the trial court did not sanction Mother; and vacated to the extent that the trial court declined to exercise jurisdiction in the future.