J-A09017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BARRY COHEN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| VICTORIA COHEN | |
| Appellee | No. 1460 EDA 2013 |

Appeal from the Order May 10, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No(s): No. 2007-62034

BEFORE:  BOWES, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 07, 2014**

Barry Cohen (Husband) appeals from the order of May 10, 2013, entered in the Court of Common Pleas of Bucks County, finding him in civil contempt for failing to abide by the terms of a Support Agreement between him and his estranged wife, Victoria Cohen (Wife).  Husband was ordered to abide by the terms of the agreement and to pay Wife's $750.00 counsel fees associated with the filing and prosecution of the contempt petition.  Husband has raised three issues in this timely appeal.  He claims the trial court erred: (1) in determining the payments were untimely, (2) in accepting as evidence a letter from Husband to his counsel, and (3) in finding Wife credible.  After

a thorough review of the Appellant's brief,[1] the certified record and relevant law, we affirm.

We adopt the relevant procedural and factual history of this matter as related by the Honorable Alan M. Rubenstein in his Pa.R.A.P. 1925(a) opinion.

> Husband, Barry Cohen, has appealed this Court's Order of May 10, 2013, finding him in contempt and ordering him to pay Wife's counsel fees in the amount of $750.00.
>
> This finding of Contempt was made on January 13, 2012, however, the Order was not filed and officially docketed until May 10, 2013. **See** Order of Superior Court, May 4, 2012; **see also Cohen v. Cohen**, BCCP No. A06-07-62034-D.
>
> In March of 2006, the parties separated and entered into a spousal support agreement. Husband, Barry Cohen, filed a Complaint in Divorce on June 28, 2007. Since that time, the parties have been involved in contentious, acrimonious, and protracted litigation. During the course of this divorce action, approximately 30 petitions for contempt, enforcement, and/or other relief have been filed. **See Cohen v. Cohen**, BCCP No. A06-07-62034-D (Divorce), E (Equity), Q (Equitable distribution) and S (Support).
>
> On October 12, 2011, Wife filed a Petition for Contempt with the Family Division, Bucks County Court of Common Pleas. A hearing on this Petition was scheduled for January 13, 2012.
>
> On January 13, 2012, this Court conducted a hearing on Wife's Petition for Contempt.
>
> The following evidence was presented at the hearing:

---

[1] Victoria Cohen, Appellee, chose not to file a brief.

On March 15, 2006, Husband, Barry Cohen, and Wife, Victoria Cohen, entered into a Spousal Support Agreement wherein, beginning on March 1, 2006, Husband was to pay Wife $4,400.00 per month *payable on the fifteenth day of each month*.[2] **See Support Agreement** attached hereto. This sum was to be "*payable by cash, check or direct deposit to Wife's bank account* as the parties shall agree." **Id**.

Wife testified that the September 15, 2011 spousal support payment of $4,400.00 was untimely. Wife stated that she did not receive the check from Husband until September 26, 2011. This payment was mailed to Wife's former counsel by Husband's counsel on September 15, 2011.

Wife further testified that she did not receive the October 15, 2011 spousal support payment until October 20, 2011.

Wife testified that the November 15, 2011 payment was also late and was not received until November 18, 2011. Like the September payment, the November 15, 2011 spousal support payment was first given to Husband's counsel by Husband. Husband's counsel then mailed the payment to Wife's counsel, rather than to Wife or her "bank account" in accordance with the Spousal Support Agreement of March 15, 2006.

Lastly, Wife testified that she did not receive the spousal support payment of December 15, 2011 until December 16, 2011.[3]

Wife testified that she received an invoice from her counsel, John Heley, Esquire, for $750.00, which represented the cost of filing the Petition for Contempt as well as his appearance at the hearing of January 13, 2012.

_____

[2] We note the terms of the agreement specifically required the monthly payment to be made directly to Wife, and the beginning date was originally March 1, 2006, but was amended and initialed by the parties to March 15, 2006.

[3] The Petition for Contempt only complains of the September 15, 2011 payment being late. However, testimony regarding the other months was presented without objection.

> Starting in September, 2011, the spousal support payments from Husband were either personally handed or mailed to Husband's counsel, William Marshall, Esquire, who then mailed the payments to Wife's counsel.

Trial Court Opinion, 7/29/13, at 1-3 (citations to record omitted).

Our standard of review for an order regarding civil contempt is as follows:

> This Court will reverse a trial court's order denying [or granting] a civil contempt petition only upon a showing that the trial court misapplied the law or exercised its discretion in a manner lacking reason. *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009)(citations omitted). In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order. *Lachat v. Hinchcliffe*, 769 A.2d 481, 489 (Pa. Super. 2001) (citations omitted). To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent. *Id*.

*MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012).

In his first issue, Husband claims the trial court erred in determining his payments were late. He argues that the agreement states he is to pay wife "$4,400 per month payable on or before the fifteenth day of each month." *See* Agreement at ¶ 1. Husband claims the Agreement contained no terms of when the payment was to be received, only when it was payable. Therefore, he claims that as he has mailed the check by the fifteenth of each month, he complied with the terms of the agreement – specifically he *paid* the money by the fifteenth of each month.

Accepting, *arguendo*, Husband's novel contention that "payable" does not equate to "payment received," he is still not entitled to relief. The *timing* requirement of payment is only one of the conditions attached to the support payment. The full text of Paragraph 1 of the Agreement reads as follows:

> 1. Beginning March 15, 2006 Husband shall pay to Wife directly the amount of $4,400 per month payable on or before the fifteenth of each month. This sum of money shall be payable by cash, check or direct deposit to Wife's bank account as the parties shall agree. The parties agree that for the month of March 2006 only, Husband shall remit to Wife $2,200 or one half the usual amount.

Support Agreement, at ¶ 1.

Additionally, Paragraph 10 of the Agreement addresses the ability of the parties to modify the Agreement.

> 10. No modification or waiver of this Agreement or any part thereof shall be valid or effective unless in writing signed by both parties; and failure to insist upon a strict performance of any provision of this Agreement shall not be deemed to be a waiver or relinquishment for the future of any such terms, option or election and all provisions of this Agreement shall remain in full force and effect.

*Id*. at ¶ 10.

There are two relevant components to the proper payment of Husband's monthly spousal support obligation: (1) support is payable on or before the fifteenth of every month; (2) payment is to be *made directly* to Wife or her bank account. Husband admitted that from September through November he made payment to his lawyer who then sent the check to Wife's lawyer who then gave the check to Wife. *See* N.T. Hearing, January 13,

2012, at 36-37. The trial court found, and we agree, that this method of delivery did not comply with the requirement of direct payment to Wife. The terms of the Agreement requiring direct payment were not modified in writing, much less signed by both parties. By the express terms of the Agreement, Husband had no right to unilaterally amend the terms of the Agreement. Regardless of the timing off the payment, Husband did not comply with the terms of the agreement requiring he make the payments directly to Wife.

Husband's violation of the direct payment condition of the agreement was specifically noted by the trial court at the conclusion of the hearing.

> THE COURT: … Based upon the evidence that I've heard, Mr. Cohen is clearly in contempt. How do I know that? Because the agreement which he entered into, and which has not been challenged, states that he shall pay wife directly $4400 per month, payable on or before the 15th day of each month. It also is to be payable by cash, check, or direct deposit to Wife's bank account as the parties shall agree. For whatever reason, the letter, if not the spirit of that agreement, has not been followed. Instead, Mr. Cohen has decided, perhaps unilaterally, to send the checks to his counsel adding another layer to the payments, and Mr. Marshall adds another layer to the payment schedule by sending it to Mr. Heley, or previously to Ms. Cardonick [Wife's previous counsel]. So we have two conduits which are not necessary.
>
> The Order is clear, precise, and unmistakable. Mr. Cohen is to pay [$4,400.00] directly to Wife, or by direct deposit to Wife's bank account.

*Id.* at 66-67.

It is clear that the trial court found Husband had violated the "direct payment" requirement. This violation, alone, supported the trial court's

finding of contempt. Therefore, we find no error of law or abuse of discretion in the finding of contempt.

In light of our initial determination, Husband's final two issues necessarily fail. In his next issue, Husband claims the trial court erred in accepting into evidence a letter he wrote to his counsel in which he stated, among other things, that Wife would be "whining about the check but it is the only weapon I have." *See* Exhibit W-7. Husband claimed introduction of the evidence violated his attorney-client privilege. The determination of contempt did not rely upon the contents of the letter. Further, the trial judge noted at the hearing that he was making no determination whether Husband was using late payments as a weapon. *See* N.T. Hearing, 1/13/2012, at 68. Because the trial court did not rely upon the letter and the finding of contempt was based upon other evidence, this issue is moot.

Husband's last issue is a claim that Wife was not credible because she lied about whether the bank was open on Saturdays. This claim is in reference to Wife's testimony at the hearing that she could not deposit the December check until Monday, December 19, 2011. Wife testified although she received the check on Friday, December 16, 2011, her bank was not open on Saturday, thereby making the funds unavailable to her for a number of days. *See* N.T. Hearing, 1/13/2012, at 16, 31. Husband claims that after the hearing he discovered that the local branches of the banks near Wife's residence are all open on Saturdays.

Initially, we note that the trial court did not accept Husband's late production of evidence. *See* Order denying Motion for Reconsideration, 2/28/2012. Therefore, his assertion that Wife lied is not supported by evidence of record. Even accepting the assertion Wife lied, her testimony was only relevant to the timing of the payment, not to the whether the payment was made directly to her. The determination that Husband violated the direct payment condition was not dependent upon Wife's credibility; it was Husband's own admissions that determined he had violated that term of the Agreement. Therefore, the issue of Wife's credibility is not relevant to the resolution of the appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014