J-A21026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAROL MACKENZIE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES BUFALINO | |
| Appellant | No. 3129 EDA 2013 |

Appeal from the Order Entered October 16, 2013
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): 2007-07498

BEFORE:  BOWES, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                     **FILED NOVEMBER 18, 2014**

Charles Bufalino appeals from the order entered October 16, 2013, in the Montgomery County Court of Common Pleas.  The order found Carol MacKenzie, Bufalino's former wife, in contempt of the parties' divorce decree[1] by failing to make mortgage payments on their former marital residence pursuant to the parties' equitable distribution agreement, but imposed no sanctions.  On appeal, Bufalino challenges the trial court's factual findings with regard to the contempt petition, the court's refusal to

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] While the trial court indicated MacKenzie was in contempt of the parties' equitable distribution agreement, it appears that the agreement was incorporated into the divorce decree.  **See** Trial Court Opinion, 12/20/2013, at 1; N.T., 1/11/2010, at 11-12.  Therefore, MacKenzie was technically in contempt of the divorce decree.

order transfer of the deed of the marital home to his name, and the court's failure to consider the best interests of the parties' children. Because we conclude the October 16, 2013, order is interlocutory and not appealable, we quash this appeal.

The facts underlying the present appeal are aptly summarized by the trial court as follows:

Charles Bufalino … and Carol MacKenzie … were married on November 1, 1997 and divorced through a decree dated January 21, 2010. They are parents of two children, [a girl, born in 2004, and a boy, born in 2005]. Attached to the parties['] divorce decree is an equitable distribution agreement dated January 11, 2010. Pursuant to point one of … that agreement, "[t]he parties own real estate as tenants by the entireties suituate at [] Rock Glen Road, Wynnewood, Montgomery County, Pennsylvania ("marital residence"). Charles Bufalino shall forthwith convey all of his right, title and interest in said premises to Carol MacKenzie under and subject to the first and second mortgage liens and line of credit thereon. Upon said conveyance, Carol MacKenzie shall be responsible for payment of said first and second mortgage liens and line of credit and shall indemnify and hold Charles Bufalino harmless therefrom."[1]

_____

[1] All debt associated with the marital residence was discharged and [Bufalino] is no longer obligated for any debts arising from the marital residence.

_____

On February 21, 2012, [Bufalino] filed a "Petition in Special Relief re: Contempt of Equitable Distribution Agreement of January 11, 2010" and filed a revised version of this petition on March 22, 2013. In these petitions [Bufalino] alleged [MacKenzie] has not paid the loans on the marital residence since May of 2011 and therefore a foreclosure was imminent. The parties first appeared before the undersigned on April 4, 2013 on [Bufalino's] petitions.[2] At this hearing, [Bufalino] argued that "there had been no indication from [MacKenzie]

- 2 -

since May of 2011 that there was any problem."[3] In response, [MacKenzie] testified that she initially had issues communicating with the bank regarding the mortgage loans because her name is not on these contracts.[4] Her inability to modify the mortgage and problems with child support led her to file for bankruptcy and consult with a bankruptcy attorney, who allegedly advised her to stop paying the mortgage. [MacKenzie] then refuted [Bufalino's] testimony regarding knowledge of the foreclosure stating "[Bufalino] has known this and he's known this for quite some time, and he sat on it."

_____

[2] [T]he undersigned consolidated all outstanding petitions for the April 4, 2013 hearing. Consequently, this hearing concerned three separate issues: support exceptions (in response to [MacKenzie's] petition filed February 19, 2013), equitable distribution (in response to the above petitions filed by [Bufalino]) and custody (in response to an emergency petition filed by [Bufalino] on June 25, 2012 and a petition for special relief in summer custody filed by [MacKenzie] on September 23, 2012). On April 4, 2013, the undersigned entered a final order regarding custody and on April 17, 2013, the undersigned entered a final order regarding support. Neither party took an appeal from either of these orders. Therefore, only the portion of the April 4, 2013 hearing that concerned equitable distribution was transcribed.

[3] While an email was introduced from Feburary 21, 2012, at the October 11, 2013 hearing, that indicated that [Bufalino] had notice of the foreclosure as of that day[, Bufalino] claimed that he only found out as of February 2013 that [MacKenzie] had stopped paying the mortgage.

[4] The Court acknowledged the fact that [MacKenzie] initially had issues communicating with the bank because the mortgage is in [Bufalino's] name.

_____

At the conclusion of the April 4, 2013 hearing, the undersigned entered an interim order requiring "both parties … to cooperate with Wells Fargo Bank to modify the mortagage and line of credit. Parties are to copy each other on any or all correspondence involving the mortgage modification. [Bufalino] shall maintain on-going contact with the Bank to keep the

- 3 -

modification moving forward." The parties were advised to submit weekly status reports to the undersigned as to the progress of the mortgage modification. The parties had a status telephone conference on this issue with the undersigned in August and on October 11, 2013[,] the parites appeared before the undersigned for a final hearing on the equitable distribution issue. At this hearing, [Bufalino] requested that the marital residence be transferred back in his name. The undersigned took the matter under advisement and issued a final order to the parties on October 16, 2013.

Trial Court Opinion, 12/20/2013, at 1-2 (record citations omitted).

In its October 16, 2013, order, the trial court found MacKenzie in contempt of the parties' divorce decree for failing to make mortgage payments on the martial residence and failing to notify Bufalino when she stopped doing so in violation of the equitable distribution agreement. *See* Order, October 16, 2003. However, the court determined that her actions had not "caused any financial detriment to [Bufalino,]" because he had discharged the mortgages in bankruptcy, and MacKenzie was bound by the equitable distribution agreement to hold him harmless in the event of any financial harm resulting from her breach of the agreement. *Id.* The trial court also concluded that Bufalino's behavior "in part, perpetuated [MacKenzie's] inability to make timely payments by failing to stay current on his child support and alimony." *Id.* The court directed MacKenzie to forward to Bufalino all future communication regarding foreclosure of the mortgage. Lastly, the court addressed Bufalino's request to have the deed of the property transferred back to his name:

In the event that [Bufalino] can provide the Court with a letter from a representative who has authority to bind Wells

- 4 -

Fargo, that Wells Fargo will commit to refinance or modify the mortgages if the deed is transferred to [Bufalino], then the Court will entertain an Order for [MacKenzie] to cooperate with [Bufalino] to effectuate the transaction to restructure the mortgages. [MacKenzie] would then be permitted to remain in the property or sell it as she sees fit.

*Id.* This timely appeal followed.[2]

As noted above, on appeal, Bufalino challenges (1) the trial court's findings of fact, specifically finding him partially responsible for the default and finding he suffered no harm as a result of the default; (2) the court's refusal to transfer title of the propery to him except upon his satisfaction of an impossible condition; and (3) the court's failure to consider the best interests of the children by avoiding foreclosure on the marital home. However, before we may consider Bufalino's substantive claims, we must first determine if the order on appeal is properly before us, since "[t]he appealability of an order goes directly to the jurisdiction of the Court asked to review the order." *Takosky v. Henning*, 906 A.2d 1255, 1258 (Pa. Super. 2006).

In the present case, Bufalino has appealed the October 16, 2013, order of the trial court holding MacKenzie in civil contempt. "It is well settled that **unless sanctions or imprisonment is imposed**, an Order

---

[2] We note that Bufalino self-designated this appeal as a "Children's Fast Track Appeal" and, contemporaneous with the filing of his notice of appeal, filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(ii). Upon review of the appeal, however, this Court declined to list the appeal as a "fast track" case.

declaring a party to be in contempt is held to be interlocutory and not appealable." *Id.* at 1258 (emphasis supplied), *citing **Sargent v. Sargent***, 733 A.2d 640, 641 (Pa. Super.1999). Moreover, when a contempt order that imposes sanctions also contains a purge condition, the order is still final so long as "no further court order be required before the sanctions take effect." ***Foulk v. Foulk***, 789 A.2d 254, 258 (Pa. Super. 2001).

Here, the order on appeal declared MacKenzie in contempt of the parties' divorce decree by failing to make mortgage payments on their former marital residence pursuant to the parties' equitable distribution agreement, but imposed no sanctions for her behavior. Although the court expressed a willingness to **reconsider**, at some future time, Bufalino's request to impose a sanction on MacKenzie –namely, to have the deed to the marital residence transferred to his name –it did so contingent upon Bufalino's ability to secure Wells Fargo's commitment to refinance the property. It is evident that, in the event Bufalino is able to secure such a commitment, further proceedings will be required. Therefore, the order on appeal is an interlocutory finding of contempt.[3]

---

[3] We note that a motions judge on this Court initially quashed this appeal *sua sponte* by order dated on January 16, 2014, concluding that the order on appeal was an interlocutory finding of contempt absent the imposition of sanctions. However, Bufalino subsequently filed an Application for Reconsideration and Reinstatement of Appeal on January 29, 2013. Thereafter, on March 21, 2014, the appeal was reinstated without opinion. ***See*** Order, 3/14/2014.

Bufalino argues, however, that the order on appeal should be considered a collateral order pursuant to Pa.R.A.P. 313 because "the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Specifically, he contends his children's home will be "irreparably lost absent action by this Honorable Court." Application for Reconsideration and Reinstatment of Appeal, 1/29/2014, at ¶ 4. *See also* Bufalino's Reply Brief at 4. In support of this contention, Bufalino relies upon this Court's decision in *Harcar v. Harcar*, 982 A.2d 1230 (Pa. Super. 2009).

In *Harcar*, mother and father were natives of the Republic of Turkey, but moved to Pennsylvania sometime after child's birth. The parties later separated, and mother was awarded primary physical custody of child. In June of 2006, she requested permission to take child to Turkey for summer vacation. In an order dated June 2, 2006, the trial court granted mother's request, but directed her to return child to Pennsylvania on August 18, 2006. However, once in Turkey, mother filed for divorce from father, and initiated custody proceedings in Turkey. Father filed a petition for special relief, asserting that mother did not intend to return to Pennsylvania despite the court's June 2006 order. On September 5, 2006, the trial court issued another order directing mother to return to Pennsylvania. Mother, again, failed to comply. *Id.* at 1231-1232.

In March of 2008, Father filed a petition for contempt based upon mother's failure to comply with the trial court's June 2006 and September 2006, orders. Subsequently, on October 9, 2008, the trial court entered the order that was the subject of the appeal. In particular, the order found mother in contempt, but did not impose any sanction. The court noted that child had been living with mother in Turkey for almost two years, and father was also living in Turkey on an educational sabbatical. Because Father was no longer living in Pennsylvania, and it did not appear that he intended to return, the court "reasoned that it would not be in Child's best interests to impose as a sanction on Mother that she should have to return Child to Beaver County[.]" *Id.* at 1233.

Father appealed the order arguing, *inter alia*, that the trial court erred in failing to impose a sanction for mother's contemptuous behavior. **Without discussing the appealablity of the contempt order**, this Court concluded that the trial court abused its discretion "in refusing to impose any sanction on Mother for her flagrant contempt of the trial court's [orders] directing her to return Child to Beaver County by August 18, 2006." *Id.* at 1240. Accordingly, the Court remanded for the imposition of an appropriate sanction. This Court found particularly relevant the fact that mother fled to a foreign jurisdiction with child and initiated a custody battle there, **after** the trial court had assumed jurisdiction in Pennsylvania. *See id.*

It is evident that the facts in *Harcar* are unique, and clearly distinguishable from the facts in the present case. Indeed, *Harcar* involved

a trial court's failure to sanction a mother who flagrantly disregarded a custody order, and absconded with her child to a foreign country. Significantly, the panel deciding *Harcar* did not address the appealability of the contempt order.[4]   Accordingly, we do not find that it controls our disposition of the present case.

Lastly, with regard to Bufalino's contention that "[t]he Children's home will be irreparably lost"[5] should we deny review, we note that there is no evidence in the record that Bufalino has the financial ability to save the home.  As the trial court explained in its opinion,

> At the October 11, 2013 hearing, [Bufalino] requested that the deed to the marital residence be transferred into his name.  The Court considered this request but was concerned about the feasibility of the option considering the facts that [Bufalino] had his debts discharged in bankruptcy, lost one of his two properties in Pittston to a tax sale and was behind two months on the mortgage on his other Pittston property.  Threfore, in creating its order, the undersigned conditioned the deed transfer on an assurance from a representative at Wells Fargo, who had the authority to bind the company, that he or she would "commit to refinance or modify the mortgages if the deed is transferred to [Bufalino]."

Trial Court Opinion, 12/20/2013, at 3 (record citations omitted).

---

[4] We note that Bufalino has provided us with no authority in which an appellate court considered an otherwise interlocutory contempt order as a collateral order for purposes of appeal.  The *Harcar* Court certainly did not do so.

[5] Application for Reconsideration and Reinstatment of Appeal, 1/29/2014, at ¶ 4.

Therefore, because we conclude the order on appeal finding MacKenzie in civil contempt, but imposing no sanctions, is interlocutory and not appealable, we quash this appeal.

Appeal quashed. MacKenzie's Motion to Strike Appellant's Reply Brief and Reply Letter is denied as moot.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *11/18/2014*