J-A20007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COSTAS GREKIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TARA GREKIS | : | |
| | : | |
| Appellant | : | No. 280 WDA 2021 |

Appeal from the Order Entered January 26, 2021
In the Court of Common Pleas of Butler County
Civil Division at No(s): F.C. No. 14-90337-C

| | | |
|---|---|---|
| COSTAS GREKIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TARA GREKIS | : | |
| | : | |
| Appellant | : | No. 393 WDA 2021 |

Appeal from the Order Entered February 24, 2021
In the Court of Common Pleas of Butler County
Civil Division at No(s): F.C. No. 14-90337-C

| | | |
|---|---|---|
| COSTAS GREKIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TARA GREKIS | : | |
| | : | |
| Appellant | : | No. 394 WDA 2021 |

Appeal from the Order Entered February 24, 2021
In the Court of Common Pleas of Butler County
Civil Division at No(s): F.C. No 14-90337-C

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: FEBRUARY 15, 2022**

Tara Grekis ("Mother") appeals from the Butler County Court of Common Pleas' order holding her in contempt of court for violating the custody order between her and Costas Grekis ("Father"). The contempt finding stemmed from Mother's actions in relation to a vacation to Greece that Father planned to take with his and Mother's two minor daughters, G and M. Mother also appeals from the court's order denying Mother's petition for contempt and its order recusing itself from future proceedings in the custody matter. We affirm.

Mother and Father divorced in 2016 and share physical and legal custody of G and M. The current custody order was entered on May 24, 2018. Paragraph 6 of the custody order addresses vacation time. Under Paragraph 6(a), each parent is entitled to two weeks of summer vacation with G and M and must notify the other parent of the chosen vacation dates by April 1 or April 15, depending on the year. If one parent fails to notify the other parent of their preferred vacation weeks by the applicable date, the parent does not forfeit their vacation time, just their first choice of vacation dates.

Paragraph 6(c) of the custody order specifically addresses international travel. It allows for international travel to countries that subscribe to the Hague Convention so long as the traveling parent advises the other parent at least 30 days in advance of travel. Paragraph 6(d) of the order further provides that each parent shall hold the passport of only one child, with Mother holding G's passport and Father holding M's passport. Pursuant to a June 9, 2016 court

order, each parent is required to relinquish the child's passport in their possession to the traveling parent at least two weeks prior to the notified day of international departure.

Father and his current wife planned to take a vacation with G and M to Greece in July 2020. Because of the travel restrictions resulting from the COVID-19 pandemic, however, Father rescheduled the trip to August 20, 2020 through August 31, 2020. Father provided timely notice of the change regarding his international travel plans to Mother. *See* N.T. Proceedings, 10/2/20, at 7, 9. Mother, however, did not turn over G's passport by August 6, 2020, as required by the June 9, 2016 order. Father filed a petition for contempt/special relief. Mother filed a response in which she explained that she did not turn over the passport because she believed travel to Greece was not possible in light of the COVID-19 pandemic.

On August 11, 2020, the court entered an order scheduling a hearing on Father's contempt petition for September 23, 2020, and directing Mother to turn G's passport over to Father by the end of the business day. Father was able to retrieve the passport from Mother's counsel's office on August 12, 2020. *See* [Mother's] Emergency Petition for Special Relief/Petition for Contempt, 8/20/21, at ¶ 10.

On August 20, 2020, Father provided Mother with a copy of an "extraordinary entry to Greece" that the Consulate General of Greece ("Consulate") had issued for him, Father's wife, G and M. The extraordinary

entry granted Father, his wife, G and M permission to enter Greece on August 21, 2020 and to "enter Greece until 31[st] August 2020." Extrao[r]dinary Entry to Greece, 8/14/20 (single page). Mother spoke with the Consulate. Following that conversation, the Consulate revoked the extraordinary entry to Greece for the two children, explaining that:

> We were informed today by the biological mother of the above children, Tara Grekis[,] and her lawyer John M. Schaffranek that according to a court order, Mr. Costa A. Grekis has to request the mother's authorization in order for the children to be able to travel abroad.
>
> We were not informed by the applicant (Costa A GREKIS) of the existence of the above court order.

Revoking of Extrao[r]dinary Entry to Greece, 8/20/20 (single page).

However, as the trial court specifically noted, "[i]n the Custody Order, permission from one parent for the other to travel internationally with the children was not required." Findings of Fact and Order of Court, 1/26/21, at 4. By the time the extraordinary entry was revoked, Father, his wife, G and M had already flown from Pittsburgh, Pennsylvania to Atlanta, Georgia, where they were scheduled to catch their connecting flight to Greece. The revocation forced them to fly from Atlanta back to Pittsburgh.

Mother filed an emergency petition for special relief and contempt, asking that Father be held in contempt, that he be permanently prohibited from traveling internationally with the children and that the matter be heard at the hearing scheduled for September 23, 2020. Father filed an answer to the petition and a counterclaim for contempt. The court eventually held a

- 4 -

hearing on the contempt petitions on October 2, 2020. Both Mother and Father testified at the hearing. Following the hearing, the court entered an order on January 26, 2021, which held Mother in contempt and ordered her to pay Father a total of $14,668.70 in sanctions - $12,231.20 for airline fees and $2,437.50 for counsel's fees.

Mother filed a motion for reconsideration, essentially arguing that the court had shown bias by pre-judging the matter, that there was an inadequate basis for the court to find her in contempt of the custody order, that the sanctions were excessive and that she was entitled to a ruling on the petition for contempt she had filed against Father. The trial court entered an order on February 26, 2021, denying the motion for reconsideration in part and granting the motion in part. It granted the motion to the extent that it recognized the court had not ruled on Mother's petition for contempt, and it proceeded to deny that petition. The court denied the motion for reconsideration in all other aspects. The court issued a separate order on February 26, 2021, in which it recused itself from all further proceedings.

Mother filed three separate notices of appeal. Specifically, on February 25, 2021, Mother filed a notice of appeal from the January 26, 2021 order finding her in contempt. On March 23, 2021, Mother filed a notice of appeal from the February 26, 2021 order granting her motion for reconsideration in part and denying it in part, as well as a notice of appeal from the February 26,

2021 order in which the trial court recused itself from all further proceedings. This Court consolidated the appeals *sua sponte*.

Mother first argues in her appellate brief that the trial court, after recusing itself from all further proceedings, should have also vacated its orders on the contempt petitions and ordered that a new hearing be held on those petitions in light of the court's admitted partiality when ruling on the petitions. This claim fails for multiple reasons.

In the first instance, Mother's assertion of the court's bias rests solely on her allegation that the court stated prior to the hearing on the contempt petitions that it hoped Mother "brought her checkbook." Appellant's Brief at 9. However, as both the court and Father observe, there is no such statement on the record. Moreover, the court did not concede that it had not been impartial, as Mother suggests, but rather, recused itself "[a]s a result of counsel's concerns regarding the Court's impartiality." Trial Court Order, 2/26/21 (single page).

In any event, as the trial court also observed, Mother did not raise the issue of the court's alleged bias before or at the hearing on the petitions for contempt, in her post-hearing proposed findings of fact and conclusions of law, or at any time before the court ruled in Father's favor regarding his petition for contempt against Mother. Rather, Mother raised this issue for the first time in her motion for reconsideration. As such, the trial court concluded that Mother had waived this issue. We agree. ***See Strange v. Janssen***

*Pharms., Inc.,* 179 A.3d 45, 64 n.7 (Pa. Super. 2018) (finding that issues raised for the first time in a motion for reconsideration to the trial court are waived).

We also note that Mother did not ask for the relief she now seeks in her appeal - a *de novo* hearing on the petitions for contempt - in her motion for reconsideration. Rather, she merely alleged that the court had pre-judged the matter and asked for reconsideration of the contempt order on that basis. She is therefore raising her specific claim that she was entitled to a *de novo* hearing based on the court's alleged bias for the first time on appeal. The claim is waived for that reason as well. *See* Pa.R.A.P. 302(a) (providing that issues not raised before the trial court are waived and cannot be raised for the first time on appeal); *see also Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017) (holding that a party seeking recusal of a judge must raise the issue as soon as they discover the facts that form the basis of their motion). No relief is due on this claim.

In her second claim, Mother argues the trial court improperly found that she was in contempt of court because it did not specifically identify what provision of what order she allegedly willfully violated. This claim also fails.

When reviewing a trial court's order on a contempt petition, this Court is limited to determining whether the trial court committed a clear abuse of discretion. *See P.H.D. v. R.R.D*., 56 A.3d 702, 706 (Pa. Super. 2012). A trial court may hold a parent who willfully disobeys a custody order in civil

contempt. ***See Harcar v. Harcar,*** 982 A.2d 1230, 1234 (Pa. Super. 2009). To sustain a finding of civil contempt, the complainant must prove by a preponderance of the evidence that: (1) the contemnor had notice of the specific order which the contemnor is alleged to have disobeyed; (2) that the act constituting the violation was volitional; and (3) that the contemnor acted with wrongful intent. ***See id.*** at 1235. When determining whether a party acted with wrongful intent, so as to support a finding of contempt, the trial court should use common sense and consider the context of the party's actions. ***See Commonwealth v. Reese***, 156 A.3d 1250, 1258 (Pa. Super. 2017).

Here, the trial court found that Mother's actions amounted to contempt. The court noted that Mother refused to produce G's passport two weeks before the August trip to Greece, even though the June 9, 2016 order specifically required her to do so. The court also noted that Mother admitted she spoke to the Greek Consulate and that after the conversation, the Consulate revoked the extraordinary entry for the children on the basis that Mother had not authorized the children's vacation to Greece. The revocation specifically stated that Mother had informed the Consulate that the custody order governing G and M required her to provide that authorization. Again, as the court noted, no such authorization was required under the custody order. All in all, the court found that "Mother's actions prevented Father's valid Court[-]Ordered

vacation time with [the] children." Findings of Fact and Order of Court, 1/26/21, at 4.

We see no abuse of discretion in the court's findings. Mother argues, however, that the contempt order cannot stand because Father and the trial court "failed to identify what specific provision of what specific order Mother was alleged to have violated." Appellant's Brief at 11. Essentially, Mother is attempting to draw our attention away from the June 9, 2016 order to focus on Father's motion and the trial court's order finding her in contempt. She therefore characterizes the issue as whether there was an order prohibiting her from communicating with the Greek Consulate.

Of course, neither Father nor the trial court contended that Mother was absolutely barred from communicating with the Greek Consulate. Instead, Father asserted, and the trial court found, that Mother misrepresented the terms of the custody order when she spoke with the Greek Consulate in an effort to derail Father's vacation plan.

As noted above, a finding of civil contempt required Father to prove that Mother had notice of the order allegedly violated. The trial court specifically found that "Mother knew of the Custody Order and August 11, 2020 Order," which required her to turn over G's passport to Father so that their trip to Greece could proceed. Order of Court, 2/24/21, at 1. The trial court then found that, based on her actions, Mother had willfully violated the custody order's provisions regarding Father's allotted vacation time with G and M. Other than

her attempts at mischaracterizing them, Mother does not address the trial court's actual findings. Mother has simply failed to show that the trial court abused its discretion in holding her in contempt based on its finding that Mother had intentionally misrepresented the terms of the custody order to the Greek Consulate in an effort to disrupt Father's vacation.

Mother argues in her third claim that, even if she was in contempt of court, the sanctions the trial court imposed were excessive and not supported by the record. She summarily asserts that although the court ordered her to pay $12,231.20 for lost airline fees, Father's own testimony establishes that Father's airline fees were only approximately $6,000. As such, Mother seems to argue that she should only pay $6,000 as sanctions for Father's lost airline charges. This claim is meritless.

Father testified, and provided documentation, that the four airline tickets to Greece that he purchased cost $12,231.20. He specifically testified that he was not given a refund for those tickets. *See* N.T. Proceedings, 10/2/21, at 83, 87.

In support of her assertion that the trial court should not have ordered her to pay the $12,231.20 for those tickets, Mother points to Father's testimony regarding the cost of the additional airline tickets he was forced to buy so that he, his wife, G and M could fly from Atlanta to Pittsburgh once Father learned of the Consulate's revocation of G and M's entry into Greece. Specifically, she cites to the following excerpts from the hearing:

THE COURT: Here's what I'm understanding what Mr. Grekis testified to and that was he bought three tickets, four tickets to Greece for twelve thousand some dollars. He got on an airplane in Pittsburgh. Flew to Atlanta and then returned from Atlanta to Pittsburgh and that they allowed him to do that because he had already given them twelve thousand dollars. Is that right?

[Mr. Grekis]: Yes sir.

\*\*\*

[Mother's Counsel]: Is there any documentation that supports your claim that the airline would not give you a refund or credit as a result of your return?

[Mr. Grekis]: Yes, they charged me fourteen hundred and fifty some dollars a person, six thousand for the second part. That's what they charged me."

Appellant's Brief at 13-14 (*quoting* N.T. Proceedings, 10/2/20, at 84-86)(added emphasis in Appellant's Brief omitted).

Mother offers no further argument or explanation following her recitation of this testimony, and her claim is arguably waived for that reason. ***See Commonwealth v. Love***, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that claims that are not meaningfully developed are waived). Nonetheless, we fail to see how the testimony quoted by Mother establishes that Father only lost a total of $6000 in airline fare. To the contrary, when the testimony is read in context, it fairly supports Father's assertion in his counterclaim for sanctions that "Father incurred damages …, not limited to over $12,000 in non-refundable airfare for his family to Greece and back, as well as unexpected airfare from Atlanta back to Pittsburgh." Answer to

- 11 -

Emergency Petition for Special Relief/Petition for Contempt, and Counter-Claim, 8/27/20, at ¶ 37.

In the end, the fact that the court credited Father's testimony that he had not been refunded in any way for the airline tickets to Greece, which were documented as costing $12,231.20, is reflected in the fact that the court specifically ordered Mother to pay $12,231.20 for lost airline fees. Based on all of the above, Mother has failed to show that the trial court abused its discretion in calculating the sanctions to be imposed as a result of her contempt.

In her fourth and final claim, Mother argues the court erred in finding that Father was not in contempt when: (1) Father unilaterally and secretly sought an exemption for the children to travel internationally; and (2) unilaterally had G and M tested for COVID-19 prior to that trip. This final claim also fails.

Regarding the trip to Greece, the trial court found that Father had complied with the custody order's provisions regarding international travel with the children. The court also found, as discussed above, that those provisions of the custody order did not require Father to secure Mother's approval to get an exemption for G and M to travel to Greece. Therefore, the fact that he did not do so could not support a finding of contempt.

As for the COVID-19 tests, Mother argues that Father violated the custody order's legal custody provision when he had G and M tested without

her knowledge. The legal custody provision provides that Father and Mother are to share legal custody of G and M and are entitled to input regarding major life decisions, including G and M's medical needs, education and spiritual training. Although Mother summarily asserts that the COVID-19 testing was medical in nature and falls under the umbrella of legal custody, she does not specifically contend that it was a major life or major medical decision.

Nonetheless, Mother has not shown that Father acted with wrongful intent, which requires an examination of the context in which the actions were made. **See Reese**, 156 A.3d at 1258. Mother conceded at the hearing that she and her daughters had just returned from Houston, Texas, which was a COVID-19 hotspot at the time, days before Father had the girls tested for COVID-19 on August 19, 2020. **See** N.T. Proceedings, 10/2/20, at 43, 61. There is also no dispute that Father voluntarily shared the results from the COVID-19 testing with Mother. Given these circumstances, Mother has not shown that the court abused its discretion in refusing to hold Father in contempt for having G and M tested for COVID-19 following their return from a COVID-19 hotspot and before traveling internationally. **See Harcar,** 982 A.2d at 1235. As a result, we discern no basis upon which to reverse the trial court's order denying Mother's petition for contempt.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/15/2022