J-A26021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SILVIA SANTO | : | |
| | : | |
| Appellee | : | No. 739 EDA 2022 |

Appeal from the Order Entered March 9, 2022
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2019-06877

BEFORE:   BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM PER CURIAM:                    **FILED DECEMBER 28, 2022**

Appellant, Chad Batterman ("Father"), appeals from the order entered in the Montgomery County Court of Common Pleas on March 9, 2022, which granted in part Father's petition to modify custody in part and denied all other relief, and which found Father in contempt of the court's prior custody orders. We affirm.

The trial court set forth the factual and procedural history of this case as follows:

> The instant appeal marks the continuation of a highly litigated custody case.  The majority of the litigation has resulted from "emergency" and contempt petitions filed by Father (who has filed over 85 petitions since the case was transferred from Philadelphia in April, 2019).

---

[*] Retired Senior Judge assigned to the Superior Court.

On July 16, 2021, after a five-day custody trial spanning several months, the [trial court] issued a detailed and expansive custody order (the "July 16, 2021 Order") granting Mother sole legal custody and primary physical custody of the minor children C.B.[, born October 2015,] and D.B.[, born October 2017,] (hereinafter the "Children") subject to Father's periods of partial custody.

On October 27, 2021, after another protracted hearing, the [trial court] granted Mother seven make-up days (chosen pursuant to a set regimen) (the "October 27, 2021 Order") because of Father's withholding of the Children contrary to the July 16, 2021 Order and without Mother's consent.

Over the next five months, Father filed the following petitions requesting various relief, some of which "amended" previously filed petitions:

- 11/04/21 Emergency Petition to Revise the Holiday Schedule in the July 16, 2021 Order (Seq. #336);

- 12/21/21 Amended Emergency Petition for Civil Contempt for Disobedience of the July 16, 2021 and October 27, 2021 Orders (Seq. #365);

- 12/28/21 Emergency Motion Requesting Full Time Enrollment of Parties' Son in Pre-School (Seq. #376);

- 01/10/22 Emergency Motion Requesting Mother Be Ordered to Allow Access to the Parties' Children During Her Custodial Time for the Children to Attend Their Scheduled Extra Curricular Activities (Seq. #381);

- 02/22/22 Emergency Motion Requesting Mother Be Ordered to Have the Parties' Children Wear Face Masks in Compliance with the July 16, 2021 Order and Enforcement of the Order Mother is Willfully Disobeying (Seq. #397);

- 02/25/22 Amended Motion Requesting Full Time Enrollment of Parties' Son in Pre-School (Seq. #402);

- 02/25/22 Amended Motion to Revise the Holiday Schedule in the July 16, 2021 Order (Seq. #403);

- 02/25/22 Amended Motion Requesting Mother Be Ordered to Allow Access to the Parties' Children During Her Custodial Time for the Children to Attend Their Scheduled Extra Curricular Activities (Seq. #404); and

- 03/01/22 Second Amended Petition for Civil Contempt for Disobedience of the July 16, 2021 and October 27, 2021 Orders (Seq. #405).

Each of Father's petitions filed as "Emergency Petitions" were deemed not to be emergencies and were consolidated with previously scheduled petitions.

On January 28, 2022, Mother filed an Emergency Petition for Special Relief, alleging that Father, without Mother's consent or a court order, took the parties' minor daughter to receive her first COVID vaccine and seeking an order stopping Father from taking their daughter to receive her second COVID vaccine. That same day, th[e trial c]ourt deemed that petition to not be an emergency but ordered that both parties "strictly comply with the July 16, 2021 Custody Order" and reminding that "Mother has sole legal custody" and "makes final medical decisions regarding the children except in the case of an emergency—which this is not" (the "January 28, 2022 Order").

Notwithstanding the January 28, 2022 Order, on or about February 1, 2022, Father took his daughter to receive a second COVID vaccine shot without Mother's consent. On February 22, 2022, Mother filed a Petition for Contempt, requesting th[e trial c]ourt find Father in contempt of the July 16, 202[1] Order and the January 28, 2022 Order for the vaccine issue as well as for filing additional frivolous petitions in contravention of several court orders.

On March 2, 2022, the parties appeared for a hearing before th[e trial c]ourt to address all then-outstanding matters. On March 9, 2022, th[e trial c]ourt issued an order: (1) granting Father's request for additional holiday time by extending his Hanukkah custodial period by one day, (2) finding Father in

contempt of the July 16, 2021 and January 28, 2022 Orders, (3) sanctioning Father with a purge-condition fine of $500 payable to Montgomery County Child Advocacy Project ("MCAP") or, if Father failed to pay the fine, 72 hours of incarceration, and (4) denying all other relief ("the March 9, 2022 Order").

Father filed an Emergency Request for Stay of March 9, 2022 Order, requesting, *inter alia*, that if the petition for stay was denied, he be assigned a payment plan for the $500 sanction. On March 21, 2022, th[e trial c]ourt deemed the petition to not be an emergency, but did permit Father to pay his sanction over the course of four months in monthly installments of $125.00 (the "March 21, 2022 Order").

(Trial Court Opinion, 5/24/22, at 1-4).

Father filed a notice of appeal and concise statement of errors complained of on appeal on March 22, 2022.[1]

Father now raises the following issues for this Court's review:

Did the Trial Court error as a matter of law as outlined below

---

[1] On March 23, 2022, while Father's appeal was pending before this Court, he filed an application for *supersedeas*, which sought a stay of the trial court's orders, and he filed an application to proceed *in forma pauperis*. This Court denied the application for *supersedeas per curiam* on March 23, 2022, and we denied the application to proceed *in forma pauperis* on March 25, 2022.

On April 4, 2022, Father filed an application for reconsideration of the *in forma pauperis* determination and for reconsideration of the denial of his application for *supersedeas*. On April 28, 2022, this Court denied his applications for reconsideration as they were not filed within the seven-day period during which an appellant may seek reconsideration.

After that date, Father presented multiple applications for emergency relief related to production of transcripts and other exhibits. Following this Court's denial of those motions, Father filed applications for reconsideration, which were also denied.

in the arguments section.

(Father's Brief at 1).

For the ease of the reader, we reproduce those headings from the argument section in which Father sets forth his questions presented.[2]

> 1. The [trial court] erred as a matter of law by denying all but one request of [Father's] Emergency Petition to Revise the Holiday Schedule (Seq. #336).
>
> 2. The [trial court] erred as a matter of law by failing to find [Mother] in Contempt of the July 16, 2021 and October 27, 2021 Orders (Seq. #365).
>
> 3. The [trial court] erred as a matter of law by failing to find [Mother] in Contempt of the July 16, 2021 and October 27, 2021 Orders (Seq. #405).
>
> 4. The [trial court] erred as a matter of law by denying [Father's] Emergency Petition Requesting Full Time Enrollment of Parties' Son in Pre-School (Seq. #376).
>
> 5. The [trial court] erred as a matter of law by denying [Father's] Emergency Petition Requesting Mother Be Ordered to Allow Access to the Parties' Children During Her Custodial Time for the Children to Attend Their Scheduled Extra Curricular Activities (Seq. #381).
>
> 6. The [trial court] erred as a matter of law by denying [Father's] Emergency Petition Requesting Mother Be Ordered to Have the Parties' Children Wear Face Masks in Compliance with the July 16, 2021 Order and Enforcement of the Order Mother is Willfully Disobeying (Seq. #397).

---

[2] Father's failure to list all issues in his statement of questions presented does not comply with our Rules of Appellate Procedure, which require that "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. … No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

7. The [trial court] erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order without prior notice.

8. The [trial court] erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order at a Contempt hearing when there was no pending Petition to Modify Custody heard at the hearing.

9. The [trial court] erred as a matter of law by hearing Mother's Contempt Petition (seq. #401) at the March 2, 2022 [hearing] without proper notice to Father.

10. The [trial court] erred as a matter of law by hearing Mother's Contempt Petition (seq. #401) at the March 2, 2022 hearing without following protocols per Montgomery County Court of Common Pleas.

11. The [trial court] erred as a matter of law by finding [Father] in contempt.

12. The [trial court] erred as a matter of law by imposing monetary sanctions on Father.

13. The [trial court] erred as a matter of law by imposing mandatory jail time if monetary sanctions were not paid.

14. The [trial court] erred as a matter of law by not holding a hearing to review the reasonableness of the sanctions and Father's ability to pay fine.

15. The [trial court] erred as a matter of law by Ordering instant incarceration to follow of an individual with an inability to pay monetary sanctions.

(Father's Brief at 2, 6, 14, 25, 29, 34, 45, 50, 55, 56, 57).

Our well-settled scope and standard of review are as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include

- 6 -

making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

**M.J.M. v. M.L.G.**, 63 A.3d 331, 334 (Pa.Super. 2013) (quoting **J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa.Super. 2011)).

In addition, "[w]hen considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion." **Harcar v. Harcar**, 982 A.2d 1230, 1234 (Pa.Super. 2009) (quoting **Hopkins v. Byes**, 954 A.2d 654, 655-56 (Pa.Super. 2008)). Additionally, we must consider that:

Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

**Habjan v. Habjan**, 73 A.3d 630, 637 (Pa.Super. 2013) (quoting

*Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa.Super. 2002)).

The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." *Id.* (quoting *Lachat v. Hinchcliffe*, 769 A.2d 481, 488 (Pa.Super. 2001)).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* (quoting *Stahl v. Redcay*, 897 A.2d 478, 486 (Pa.Super. 2006), *appeal denied*, 591 Pa. 704, 918 A.2d 747 (2007)).

After finding a party in contempt for failure to comply with a custody order, the party may be punished by one or more of the following:

> (i) Imprisonment for a period of not more than six months.
>
> (ii) A fine of not more than $500.
>
> (iii) Probation for a period of not more than six months.
>
> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>
> (v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1)(i)-(v). "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. When contempt is civil, a court must impose conditions on the sentence so as to permit the contemnor to purge

himself." **_Gunther v. Bolus_**, 853 A.2d 1014, 1018 (Pa.Super. 2004), _appeal denied_, 578 Pa. 709, 853 A.2d 362 (2004) (citations and internal quotation marks omitted).

After a thorough review of the certified record, the parties' briefs, and the relevant law, we conclude that the record supports the trial court's determination. **_See M.J.M., supra_**; **_Harcar, supra_**. Consequently, we affirm the order denying Father's petitions and finding Father in contempt for the reasons stated in the opinion that the Honorable Henry S. Hilles, III, entered on May 24, 2022.

Specifically, Judge Hilles noted that he did not err in amending the holiday schedule to balance holiday time between the parties. The court explained that its order granted Father an additional night during Hanukkah but denied his other requests as they were made in bad faith. (**_See_** Trial Court Opinion at 7). Further, Judge Hilles observed that the court did not err in finding that Mother was not in contempt of the custody orders based on her suggestion that she receive make-up custodial time during the Hanukkah holiday because Mother had also suggested other make-up dates that did not infringe on either party's holiday custodial periods. (**_Id._** at 9-10).

Concerning Father's claims that Mother was not enrolling the parties' son in pre-school, Judge Hilles emphasized that Mother has sole legal custody and her choice of pre-school was appropriate. Further, Father did not introduce any credible evidence that Mother was excluding him from extra-

curricular activities, or that she failed to have Children masked in contradiction of a court order. (*Id.* at 11).

Judge Hilles noted that the July 16, 2021 custody order provides that "Mother shall have sole legal custody of the Children," and "[t]he ultimate decision-making shall be up to Mother." (Order, 7/16/21). Hence, the trial court was not modifying the custody order when it reiterated in its March 9, 2022 order that Mother was sole legal custodian and had the "exclusive authority to make all final decisions relating to medical, psychological, therapeutic, dental and educational issues involving the children." (Order, 3/9/22). (*See also* Trial Court Opinion at 12-14).

Judge Hilles explained that the court did not err when it heard all of Father's outstanding petitions at the scheduled proceeding. The court advised the parties in advance that it intended to handle all then-pending petitions during the March 2, 2022 hearing, and it gave the parties ample opportunity to address each outstanding petition and admit exhibits into the record. (*Id.* at 15-16).

With respect to finding Father in contempt and issuing sanctions, Judge Hilles explained that the trial court did not err in finding that Father was in civil contempt of the court's order when Father took his daughter for a second COVID shot in direct contravention of the court's July 16, 2021 and January 28, 2022 orders. Given Father's pattern of disobeying court orders and ignoring warnings of possible contempt, the court did not err in imposing a

sanction of 72 hours of incarceration with a purge condition of a $500 fine. (*Id.* at 17-18).  As to the foregoing points, we adopt Judge Hilles' reasoning as our own.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/28/2022</u>

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF**
**MONTGOMERY COUNTY, PENNSYLVANIA**
**FAMILY DIVISION**

| | |
|---|---|
| CHAD BATTERMAN | : SUPERIOR COURT DOCKET NO. |
| APPELLANT/ FATHER | : 739 EDA 2022 |
| | : |
| v. | : |
| | : |
| | : |
| SILVIA SANTO | : LOWER COURT DOCKET NO. |
| APPELLEE/ MOTHER | : 2019 - 06877 |

## O P I N I O N

**HILLES, J.**                                                      **May 24, 2022**

Appellant, Chad Batterman (hereinafter "Father"), appeals from this Court's orders of March 9, 2022 and March 21, 2022 disposing of nine (9) petitions filed by Father and two (2) interrelated petitions filed by Appellee, Silvia Santo (hereinafter "Mother"). For the reasons set forth below, the March 9, 2022 and March 21, 2022 orders should be affirmed.

## I.     FACTS AND PROCEDURAL HISTORY

The instant appeal marks the continuation of a highly litigated custody case. The majority of the litigation has resulted from "emergency" and contempt petitions filed by Father (who has filed over 85 petitions since the case was transferred from Philadelphia in April, 2019).

On July 16, 2021, after a five-day custody trial spanning several months, the Honorable Melissa S. Sterling issued a detailed and expansive custody order (the "July 16, 2021 Order") granting Mother sole legal custody and primary physical custody of the minor children C.B. (D.O.B.: 10/20/15) and D.B. (D.O.B.: 10/10/17) (hereinafter the "Children") subject to Father's periods of partial custody.

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

On October 27, 2021, after another protracted hearing, the Honorable Jeffrey S. Saltz granted Mother seven make-up days (chosen pursuant to a set regimen) (the "October 27, 2021 Order") because of Father's withholding of the Children contrary to the July 16, 2021 Order and without Mother's consent.

Over the next five months, Father filed the following petitions requesting various relief, some of which "amended" previously filed petitions:

- 11/04/21 *Emergency Petition to Revise the Holiday Schedule in the July 16, 2021 Order* (Seq. #336);

- 12/21/21 *Amended Emergency Petition for Civil Contempt for Disobedience of the July 16, 2021 and October 27, 2021 Orders* (Seq. #365);

- 12/28/21 *Emergency Motion Requesting Full Time Enrollment of Parties' Son in Pre-School* (Seq. #376);

- 01/10/22 *Emergency Motion Requesting Mother Be Ordered to Allow Access to the Parties' Children During Her Custodial Time for the Children to Attend Their Scheduled Extra Curricular Activities* (Seq. #381);

- 02/22/22 *Emergency Motion Requesting Mother Be Ordered to Have the Parties' Children Wear Face Masks in Compliance with the July 16, 2021 Order and Enforcement of the Order Mother is Willfully Disobeying* (Seq. #397);

- 02/25/22 *Amended Motion Requesting Full Time Enrollment of Parties' Son in Pre-School* (Seq. #402);

- 02/25/22 *Amended Motion to Revise the Holiday Schedule in the July 16, 2021 Order* (Seq. #403);

2

- 02/25/22 *Amended Motion Requesting Mother Be Ordered to Allow Access to the Parties' Children During Her Custodial Time for the Children to Attend Their Scheduled Extra Curricular Activities* (Seq. #404); and

- 03/01/22 *Second Amended Petition for Civil Contempt for Disobedience of the July 16, 2021 and October 27, 2021 Orders* (Seq. #405).

Each of Father's petitions filed as "Emergency Petitions" were deemed *not* to be emergencies and were consolidated with previously scheduled petitions.

On January 28, 2022, Mother filed an *Emergency Petition for Special Relief*, alleging that Father, without Mother's consent or a court order, took the parties' minor daughter to receive her first COVID vaccine and seeking an order stopping Father from taking their daughter to receive her second COVID vaccine. That same day, this Court deemed that petition to not be an emergency but ordered that both parties "strictly comply with the July 16, 2021 Custody Order" and reminding that "Mother has sole legal custody" and "makes final medical decisions regarding the children except in the case of an emergency – which this is not" (the "January 28, 2022 Order").

Notwithstanding the January 28, 2022 Order, on or about February 1, 2022, Father took his daughter to receive a second COVID vaccine shot without Mother's consent. On February 22, 2022, Mother filed a *Petition for Contempt*, requesting this Court find Father in contempt of the July 16, 2022 Order and the January 28, 2022 Order for the vaccine issue as well as for filing additional frivolous petitions in contravention of several court orders.

On March 2, 2022, the parties appeared for a hearing before this Court to address all then-outstanding matters. On March 9, 2022, this Court issued an order: (1) granting Father's request for additional holiday time by extending his Hanukkah custodial period by one day, (2)

3

finding Father in contempt of the July 16, 2021 and January 28, 2022 Orders, (3) sanctioning Father with a purge-condition fine of $500 payable to Montgomery County Child Advocacy Project ("MCAP") or, if Father failed to pay the fine, 72 hours of incarceration, and (4) denying all other relief (the "March 9, 2022 Order").

Father filed an *Emergency Request for Stay of March 9, 2022 Order*, requesting, *inter alia*, that if the petition for stay was denied, he be assigned a payment plan for the $500 sanction. On March 21, 2022, this Court deemed the petition to not be an emergency, but did permit Father to pay his sanction over the course of four months in monthly installments of $125.00 (the "March 21, 2022 Order").

On March 22, 2022, Father filed a timely Notice of Appeal to the Superior Court of Pennsylvania of the March 9, 2022 and the March 21, 2022 Orders, along with a Concise Statement of Matters Complained of on Appeal raising the following issues (which are set forth below verbatim except for a renumbering of the last two issues):

"The lower court erred in its Order of March 9, 2022, for the following reasons:

1. The Judge erred as a matter of law by denying all but one request of Plaintiff's Emergency Petition to Revise the Holiday Schedule (Seq. #336).

2. The Judge erred as a matter of law by failing to find Defendant in Contempt of the July 16, 2021 and October 27, 2021 Orders (Seq. #365).

3. The Judge erred as a matter of law by failing to find Defendant in Contempt of the July 16, 2021 and October 27, 2021 Orders (Seq. #405).

4. The Judge erred as a matter of law by denying Plaintiff's Emergency Petition Requesting Full Time Enrollment of Parties' Son in Pre-School (Seq. #376).

5. The Judge erred as a matter of law by denying Plaintiff's Emergency Petition Requesting Mother Be Ordered to Allow Access to the Parties' Children During Her Custodial Time for the Children to Attend Their Scheduled Extra Curricular Activities (Seq. #381).

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

6.      The Judge erred as a matter of law by denying Plaintiff's Emergency Petition Requesting Mother Be Ordered to Have the Parties' Children Wear Face Masks in Compliance with the July 16, 2021 Order and Enforcement of the Order Mother is Willfully Disobeying (Seq. #397).

7.      The Judge erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order without prior notice.

8.      The Judge erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order at a Contempt hearing when there was no pending Petition to Modify Custody heard at the hearing.

9.      The Judge erred as a matter of law by hearing Mother's Contempt Petition (seq. #401) at the March 2, 2022 [sic] without proper notice to Father.

10.     The Judge erred as a matter of law by hearing Mother's Contempt Petition (seq. #401) at the March 2, 2022 hearing without following protocols per Montgomery County Court of Common Pleas.

11.     The Judge erred by finding Plaintiff in contempt.

12.     The Judge erred by imposing monetary sanctions on Father.

13.     The Judge erred by imposing mandatory jail time if monetary sanctions were not paid.

14.     The Judge erred as a matter of law by not holding a hearing to review the reasonableness of the sanctions and Father's ability to pay fine [sic].

15.     The Judge erred as a matter of law by Ordering instant incarceration to follow of [sic] an individual with an inability to pay monetary sanctions.

The lower court erred in its Order of March 21, 2022, for the following reasons:

16.     The Judge erred as a matter of law by denying all but one request of Father's Emergency Request [sic] for Stay of March 9, 2022 Order.

17.     The Judge erred as a matter of law by denying Plaintiff a hearing regarding his Emergency Request for Stay of March 9, 2022 Order."

## II.    DISCUSSION

A trial court order addressing custody will not be reversed absent an abuse of discretion. Reviewing courts will accept findings of the trial court that are supported by

competent evidence of record. Reviewing courts will only reject the conclusions of the trial court if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *Durning v. Balent/Kurdilla*, 19 A.3d 1125 (Pa. Super. 2011). Likewise, with respect to custody contempt orders, appellate courts will only reverse where there is an abuse of discretion. *Garr v. Peters*, 773 A.2d 183 (Pa. Super. 2001).

The Court's analysis of Father's 17 issues follows.

### Issue 1. The trial court did not err by amending the current holiday custodial time to attempt to provide the parties' equal religious holiday overnights.

Father avers that this Court erred by only granting one of his requests for amendments to the holiday schedule set forth in the July 16, 2021 Order. Father's list of requested modifications included: (1) reducing Mother's Christmas time to no more than 48 hours while increasing his Hanukkah time to at least four, 24-hour days, (2) removing Mother's Good Friday holiday and reducing Mother's Easter holiday to 37 hours while increasing his Passover holiday to four days, (3) adding Father's Purim holiday, (4) including the parents' birthdays, (5) reducing the Martin Luther King, Jr. and Presidents' Day holidays to 24 hours, and (6) equally splitting the Easter and Christmas holidays between the parties.

A review of the holiday schedule in the July 16, 2021 Order confirms that Mother retains custody of the Children for the following religious holidays every year: Easter (Good Friday at 12:00 p.m. until Easter Monday at 12:00 p.m.) and Christmas (Christmas Eve at 12:00 p.m. until December 27 at 7:00 p.m.). Father retains custody of the Children for the following religious holidays every year: Passover (from 3:00 p.m. on the first night of Passover until 9:00 a.m. on the morning after the second night of Passover with caveats based on the timing of Easter and Passover), Rosh Hashanah (the day before the holiday from 3:00 p.m. to 9:00 a.m. the morning

6

after the holiday), Yom Kippur (the day before the holiday from 3:00 p.m. to 9:00 a.m. the morning after the holiday), and Hanukkah (first night of Hanukkah at 3:00 p.m. to 9:00 a.m. the morning after with caveats based on the Christmas holiday). The rest of the holidays are alternated between the parties on an odd and even year basis.[1]

Father testified that the split in the holiday schedule was "highly religiously insensitive and biased" to his Jewish holidays and favored Mother's Catholic holidays. N.T., 3/2/2002, p. 6. However, Father's position is patently unreasonable. Father's holiday custodial time currently exceeds Mother's holiday time. Father's requests, if granted, would approximately double his holiday custodial time while cutting Mother's holiday custodial time in half. This Court granted Father an additional night during Hanukkah in recognition that the Hanukkah holiday is not a one-day holiday. This Court denied the rest of Father's requests as it found them to be in bad faith and motivated by a desire to increase his total custody time *vis-à-vis* Mother.

Father testified that he should have more holiday custody time than Mother because, unlike Mother, he celebrates both "Catholic holidays" and "Jewish holidays". While the Court declines to speculate which holidays Father truly "celebrates", it concluded that Father's testimony in this regard was generally incredible and designed to gain a custodial time advantage versus Mother.

The Court carefully reviewed the testimony at the March 2, 2022 hearing and Judge Sterling's July 16, 2021 Order and actually *increased* Father's holiday custodial time by one day. The Court did not commit error in reaching its conclusion.

---

[1] It is important to note that the holiday schedule in the July 16, 2021 Order was created following a five-day protracted custody hearing during which the court heard testimony from Father, Mother and multiple other witnesses. It is clear from the specificity of the schedule that the court carefully considered each of the holidays the parties celebrate and endeavored to allow each party to have custody time on the appropriate holidays.

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Issues 2 and 3. The trial court correctly concluded that Mother was not in contempt of the July 16, 2021 and October 27, 2021 Orders.**

Upon a finding that Father inappropriately withheld the Children without the consent of Mother, the Honorable Jeffrey S. Saltz provided in his October 27, 2021 Order the following:

> Defendant Mother is entitled to seven (7) makeup days of physical custody of the children to compensate for seven days that Plaintiff Father retained custody without authority to do so. The seven makeup days shall consist of two (2) instances of custody from a Tuesday at 8:00 a.m. to Wednesday at 7:00 p.m. (for a total of four days) and one (1) instance of a weekend, on which Father would otherwise have custody, from Friday at 5:00 p.m. to Monday at 8:00 a.m. (counting as three days), for a total of seven makeup days in all. The makeup days shall be scheduled as follows:
>
> a. Within five (5) days of the docketing of this Order, Mother shall submit to Father four (4) alternative proposals for the Tuesday-Wednesday dates and two (2) alternative proposals for the Friday-Monday dates. All of the proposed dates shall be no earlier than November 16, 2021, and no later than February 28, 2022, and shall not conflict with Father's holiday custody for Thanksgiving Break, Hanukkah, Winter Break, or Martin Luther King Day.
>
> b. Within five (5) days after Mother submits her proposal, Father shall select two (2) of the proposed Tuesday-Wednesday dates (for a total of four days) and one (1) of the proposed Friday-Monday dates, and shall notify Mother of his selection

Father avers that Mother provided dates that were not in precise compliance with the requirements set forth in the October 27, 2021 Order. He alleges that one of the proposed Tuesday-Wednesday dates chosen by Mother conflicted with Father's Hanukkah holiday custody and that Mother ignored his request to pick a different date.

The July 16, 2021 Custody Order provides that Father shall have custody of the Children for the Hanukkah holiday "from 3:00 p.m. on the first night of Hanukkah until 9:00 a.m. the following morning" with a caveat for when Hanukkah interferes with the Christmas holiday. The Court took judicial notice that the first night of Hanukkah in 2021 was November 28, 2021;

8

accordingly, because this did not interfere with Christmas, Father's Hanukkah custodial day would have been November 28, 2021.

On November 12, 2021, Mother sent an email to Father through the Our Family Wizard ("OFW") program providing Father with the following four options for her Tuesday-Wednesday makeup time:

> "Option 1: Tues, Nov 30 into Wed, Dec 1
> Option 2: Tues, Dec 7 into Wed Dec 8;
> Option 3: Tues, Dec 14 into Wed 15;
> Option 4: Tues, Dec 21 into Wed Dec 22
> --------> Please Pick two Tues-Wed combos from list above. ... The order gives
> you 5 days to make a decision from the list above. If I do no hear back in five (5)
> I will pick the best options for us and inform you of such so that we can make the
> proper arrangements and plans for these upcoming changes."

Father's 12/21/21 petition styled *Amended Emergency Petition for Civil Contempt for Disobedience of the July 16, 2021 and October 27, 2021 Orders,* Exhibit C, OFW Message 11/01/2021.

Father did not respond, so on November 4, 2021, Mother sent a follow-up OFW message to confirm that Father received the message and the Order granting makeup time. *Id.*, OFW Message 11/04/2021.

The following day, November 5, 2021 at 11:57 p.m., Father did respond as follows:

> "With regards to the Tuesday-Wednesday, I am only able to choose one date at this time
> due to you failing to comply with the Order. I choose December 7th and December 8th.
> I'm requesting you provide me an alternative Tuesday-Wednesday as your first option,
> November 30th and December 1st interfere with the religious holiday of Hanukkah,
> which I celebrate. The Order says that you are allowed to choose a Tuesday-Wednesday
> no later than February 28 2022, and as such I'm requesting additional dates that go into
> January and February for several reasons but most important is the weekly routine
> Charlie and Dash have for extra curricular activities and Dash has at The Wonderkey
> School. The Judge clearly gave the large date range so the dates were not every week,
> which is exactly what you provided for the Tuesday-Wednesday's."

*Id.*, OFW Message 11/05/21.

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Mother's options for makeup time complied with the October 27, 2021 Order. Father's assertion that Mother chose time that interfered with his Hanukkah custodial period is without merit. In fact, it was *Father* who willfully disregarded the October 27, 2021 Order. The order provided for makeup day periods where neither party's holiday custodial periods would be infringed. Father used the alleged confusion regarding one two-day option for make-up dates to deprive Mother of rightfully-awarded makeup time and, additionally, claimed Mother could not take the days to which she was entitled because of *his* "make-up time."[2]

These petitions continue a pattern by Father of attempting to have Mother be found in contempt when she is materially complying with orders of this Court and instead focusing on trivial, if not nonexistent, issues with Mother's compliance.[3] It was Father who violated the October 27, 2021 Order by not choosing one of the dates provided by Mother within the required time period and instead choosing to contest the underlying determination that Mother was awarded makeup time.

Regardless, Father was unable to demonstrate that Mother willfully failed to comply with Judge Saltz's October 27, 2021 Order. Accordingly, the trial court's decision to deny Father's petition for contempt should be affirmed.

---

[2] Upon review of the docket, it appears that Father was awarded make-up time on June 16, 2021 by the Honorable Richard P. Haaz of "three additional days this summer." As Mother's requested days were in November and December, Father did not have any make-up time he could exercise during the seven days awarded by the October 27, 2021 Order. And certainly, Judge Saltz's October 27, 2021 Order did not contemplate Father being able to unilaterally cancel Mother's makeup time by asserting his own alleged makeup time. It is fair to note that, historically, Father has periodically withheld or threatened to withhold the Children by invoking his alleged right to "makeup time".

[3] This Court notes the footnote in the October 27, 2021 Order which provides "Father is cautioned that the filing and/or prosecution of additional petitions for contempt that rely on 'gotcha' arguments rather than material violations may result in sanctions." Despite this cautioning, Father has *again* attempted to rely on a "gotcha" argument to have Mother held in contempt.

10

**Issues 4 and 5. The trial court did not err by denying Father's petitions regarding enrolling the son full-time in pre-school and allowing Father access to the Children during Mother's custodial time period for extra-curricular activities.**

During the March 2, 2022 hearing, both Mother and Father testified with respect to various pre-school options for their son. It was clear from the testimony that Mother and Father disagree with respect to where their son should attend pre-school. Ultimately, Mother has sole legal custody pursuant to Judge Sterling's July 16, 2021 Order and made the final decision in that regard. The Court entertained testimony and argument from both parties and concluded that Mother's choice of pre-school was appropriate. Accordingly, the Court denied Father's petition (which essentially sought to have Mother's final decision overturned). The Court did not err in making this decision.

Additionally, there was no credible evidence introduced by Father that Mother was excluding him from attending extra-curricular activities. The Court's denial of this petition was appropriate and did not constitute error.

**Issue 6. The trial court did not err by denying Father's petition regarding masking of the minor Children.**

Father avers that the trial court erred by not granting his petition to require Mother mask the Children while she is in public pursuant to the Center for Disease Control ("CDC") guidance.

Father did not produce credible evidence that Mother failed to have the Children masked in contradiction of CDC guidelines or any Court Order. To the contrary, the Court concluded that Father's contentions in this regard amounted to continuing efforts to harass Mother and attempt to impugn her in the eyes of the Court.

**Issues 7 and 8. The trial court did not err by "clarifying" the July 16, 2021 Order as it relates to Mother having sole legal custody.**

Father asserts that the Court erred by "modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order". Father is mistaken.

Pennsylvania case law is clear that a trial court may not modify custody if a petition to modify is not at issue. *See, P.H.D. v. R.R.D.,* 56 A.3d. 702 (Pa. Super. 2012). However the Court's March 9, 2022 Order had no effect on the parties' custodial rights or schedule. Rather, the Order was issued in connection with a contempt proceeding and was designed to prevent Father from *continuing to willfully violate* the July 16, 2021 Order. *See, e.g., N.D.J. v. D.E.J.,* 237 A.3d 463 (Pa. Super. 2020) (unpublished opinion) (at a contempt proceeding where "custody was not at issue", the trial court's contempt order – which clarified a portion of the custody order without affecting either party's custodial rights – was appropriate).[4]

With respect to legal custody, Judge Sterling's July 16, 2021 Order provides that **"Mother shall have sole legal custody of the Children."** The Order directs Mother to "make reasonable efforts" to advise Father of issues "so that he may provide his input", and directs the parties to "follow the medical, dental and educational advice provided to them" including issues involving medications for the Children. However the Order reinforces, in clear language, that **"[t]he ultimate decision-making shall be up to Mother"** (emphasis added).

Notwithstanding this unambiguous language, Father has cobbled together a theory that Judge Sterling, in fact, did *not* grant Mother sole legal custody. He essentially argues that because Judge Sterling included language in the Order directing Mother to consult with Father

---

[4] This unpublished Superior Court case is cited for its persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b).

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and follow medical advice, Father has the right to make his own unilateral decisions if, in his view, Mother is not appropriately complying. Indeed, Father has asserted in Our Family Wizard communications, filings and in court testimony that *he* may make certain unilateral decisions as the legal custodian.

Father testified in the March 2, 2022 hearing that "Judge Sterling did not truly award mother sole legal custody" and that Father has the right to "follow the advice of medical professionals" and make medical decisions on behalf of the Children. N.T., 3/2/2022, pp. 115-116. Indeed, Father testified that Judge Sterling's Order "is riddled with inconsistencies and contradictions". N.T., 3/2/2022, p. 114. Father testified that when he unilaterally had his daughter vaccinated – in clear contradiction of the July 16, 2021 Order (and this Court's January 28, 2022 Order) – he was simply "following the Order". N.T., 3/2/2022, p. 107.

The Court responded that "I'm going to issue an order that hopefully clears this up for you." N.T., 3/2/2022, p. 113. And indeed, in its March 9, 2022 Order, this Court included the following language:

> "Notwithstanding the first two sentences of this paragraph, Mother's status as sole legal custodian provides her with the sole and exclusive authority to make all final decisions relating to medical, psychological, therapeutic, dental and educational issues involving the Children, in addition to other rights and responsibilities set forth in the July 16, 2021 Order. Father's disagreement with Mother's final decisions – or mode of decision-making – in connection with such matters shall **not** entitle him to disregard such decisions or unilaterally make his own decisions regarding the Children. There is no other language in the July 16, 2021 Order that may be used to develop a theory that is contrary to this provision."

The Court added a footnote to this paragraph that read as follows:

> The Court believes that Judge Sterling's July 16, 2021 Order, including Paragraph 1b. therein, is unambiguous and not reasonably subject to confusion. However Father has incredibly articulated the position – in open court and in Our Family Wizard communications with Mother – that this Order, despite its clear language,

13

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

somehow does not grant upon Mother "sole legal custody" with "ultimate decision-making" authority. This additional provision is designed to reinforce the already-clear language of Judge Sterling's Order with respect to legal custody.

It is clear from the record of this case that the foregoing language in this Court's March 9, 2022 Order was designed to clarify Judge Sterling's (already-clear) July 16, 2021 Order which granted Mother sole legal authority. This language was necessitated, in the best interest of the Children, to try to stop Father from ignoring the July 16, 2021 Order and (contemptuously) making legal decisions on behalf of the Children.

The Court's March 9, 2022 Order essentially further defined the concept of "legal custody" in an attempt to coerce Father into complying with the existing custody order. This clarification was necessitated as a direct result of Father's contemptuous disregard for Judge Sterling's July 16, 2021 Order and this Court's January 28, 2022 Order. The clarification did *not* alter the parties' parental rights or modify the custody scheme set forth in the July 16, 2021 Order.

Father's claim in this regard is without merit.

### Issues 9 and 10. The trial court did not err by consolidating all outstanding petitions at the March 2, 2022 hearing.

Father avers that this Court erred by hearing Mother's February 22, 2022 contempt petition at the March 2, 2022 hearing (i) without proper notice to Father and (ii) "without following protocols per Montgomery County Court of Common Pleas." Father's allegations have no merit.

Father is mistaken about the proper protocols regarding the consolidation of outstanding petitions prior to a trial. The Montgomery County Family Court policy is to consolidate pending

14

petitions at scheduled proceedings, where possible, in the interest of judicial economy.[5] This Court acted within its authority to deciding to do so.

A week before the scheduled trial, Father sent an email requesting an extension of the required time to submit exhibits. The Court responded by having Chambers generate an email to both parties granting Father's request and noting that

> "[a]t the March 2 hearing, the Judge will decide all pending matters—i.e., the matters identified in the January 24, 2022 Scheduling Order plus the matters at sequence numbers 393, 397, and 401 [Mother's Petition for Contempt]. Absent a true emergency, the Judge does not foresee the need for any additional pleadings leading up to the March 2 hearing or communications of any kind from either of the parties."

Following this email, and despite the Court's clear language, Father nevertheless filed four (4) "amended" petitions – each of which raised multiple new allegations and grievances – and was permitted to address each at the March 2, 2022 hearing.[6] Notwithstanding Father's flurry of last-minute filings that he addressed at the March 2, 2022, he incredibly asserts that Mother's February 22, 2022 petition, filed eight days before the hearing, should *not* have been considered.

---

[5] The January 21, 2022 short list "settlement" conference, at which the March 2, 2022 hearing was scheduled, lasted approximately 15 minutes during which time both parties agreed settlement efforts would be futile and the matter should be scheduled immediately for a hearing. Father is essentially asking this Court to schedule a meaningless settlement conference with respect to every petition he files.

[6] As noted in the March 9, 2022 Order of the undersigned, "the day before the most-recent trial in this case, Father filed a petition at 2:12 p.m., setting forth a multitude of allegations, in 152 numbered paragraphs, many of which had previously been litigated." The remaining amended petitions were filed less than 48 hours prior to the scheduled trial and added multiple pages of averments and requests for relief Father expected to be addressed at trial.

The Montgomery County Office of the Prothonotary does not charge litigants for (i) emergency filings – on a theory that a party should not be charged for true emergent situations – and (ii) "amended" petitions – on a theory that a party should not be charged for a filing that corrects or slightly alters an earlier petition. Father regularly files (i) "emergency" petitions that are clearly not emergencies and (ii) "amended" petitions that raise numerous new issues and grievances.

The Court is concerned that Father's strategy here is to file numerous petitions while avoiding paying the filing fees that would otherwise apply. Such strategies could be considered an improper use of the process and/or civil proceedings.

15

The Court handled each of the then-pending petitions on March 2, 2022 (as it had advised the parties it intended to do). Both parties were given ample opportunity to address each outstanding petition and admit exhibits into the record.[7] The Court then rendered its decision with respect to each petition in its March 9, 2022 Order

The Court did not commit error in handling the outstanding petitions in this fashion.

### Issues 11 through 15: The trial court did not err by finding Father in contempt and imposing appropriate sanctions.

"When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, [the Superior Court's] scope of review is narrow: [the Superior Court] will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. To be in contempt, a party must have violated a court Order, and the complaining party must satisfy that burden by a preponderance of the evidence." *Harcar v. Harcar*, 982 A.2d 1230 (Pa. Super. 2009) (*citing Hyle v. Hyle*, 868 A.2d 601 (Pa. Super. 2005)).

On January 28, 2022, Mother filed an *Emergency Petition for Special Relief* alleged that notwithstanding the fact that she has sole legal custody of the Children, Father – without Mother's consent (indeed, over her objection) – took the parties' daughter to receive her first COVID vaccine. In the petition, Mother sought a court order to stop Father from taking their daughter to receive her second COVID vaccine.

That same day, January 28, 2022, this Court deemed the petition to not be an emergency but ordered that

---

[7] Father certainly availed himself of the opportunity to introduce exhibits into the record – admitting a total of approximately 1,700 pages of documents and videos.

16

"[b]oth parties shall strictly comply with the July 16, 2021 Custody Order which provides in relevant part, that Mother has sole legal custody (and therefore, makes final medical decisions regarding the children except in the case of an emergency – which this is not). The parties are permitted to address this issue at the March 2, 2022 trial".

On or about February 1, 2022, Father took the parties' daughter for a second COVID shot – *in direct violation of this Court's January 28, 2022 Order*. Father attempted to justify his conduct by asserting that the January 28, 2022 Order was void *ab initio* because it served to modify the July 16, 2021 Order "when there … was no modification of custody in front of the court." N.T., 3/2/2022, p. 110. Essentially, Father imposed his own reasoning and analysis and simply decided that he was not required to follow a court order.

To support a finding of civil contempt, a trial court must determine "(1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Harcar v. Harcar*, 982 A.2d 1230 (Pa. Super. 2009).

The Court determined that Father, in taking his daughter for a second COVID vaccination shot, was in civil contempt of the July 16, 2021 Order (granting Mother sole legal custody) and this Court's January 28, 2022 (which essentially directed Father not to make medical decisions with respect to the Children). By his own admission, Father knew of the July 16, 2021 and January 28, 2022 Orders and nevertheless arranged for his daughter's second COVID vaccine without Mother's consent. The Court concluded that Father acted with "wrongful intent" by doing so and was therefore in contempt of both orders.

The Court was then tasked with issuing an appropriate sanction. Father's behavior in this case has continued a troubling pattern of Father disobeying court orders and assigning his own personal interpretation to orders that contradict their plain language. Father has repeatedly been

17

warned about being potentially held in contempt, but his behavior has not changed.[8] Simply put, warnings to Father have not worked.

The Court ultimately imposed a sanction of 72 hours of incarceration at the Montgomery County Correctional Facility to begin March 24, 2022 (15 days from the date of the March 9, 2022 Order). The Court imposed a purge condition (as contemplated by 23 Pa.C.S. §5323(g)(2)) of a $500 fine (the maximum fine for a single incident of contempt pursuant to 23 Pa.C.S. §5323(g)) payable to the Montgomery Child Advocacy Project ("MCAP").[9]

On March 18, 2022, Father filed an "*Emergency Request for Stay of March 9, 2022 Order*" in which he set forth various requests for relief including the implementation of a payment plan for the $500 fine. By March 21, 2022 Order, this Court granted the petition in part, permitting Father to make the $500 payment in four consecutive monthly payments of $125.[10]

The dominant purpose of these sanctions was to prospectively coerce Father into complying with future Court Orders – which is in the best interest of the children. *See,*

---

[8] For example, the July 16, 2021 Order of Judge Sterling provides that "[t]o curb the chronic abuse of [the] judicial system ... neither party shall file frivolous petitions with respect to this Order or the custody of the Children" or face sanctions of "attorneys' fees, fines or incarceration." Additionally, the October 27, 2021 Order of Judge Saltz provides that "Father is cautioned that the filing and/or prosecution of additional petitions for contempt that rely on "gotcha" arguments rather than material violations may result in sanctions." And yet, despite the clear language of Judge Sterling and Judge Saltz (and this Court), Father has continued his pattern of filing serial "emergency" petitions – and disingenuous contempt petitions – that are not good faith filings but, rather, are tantamount to harassment and an improper use of process and/or civil proceedings.

[9] In a footnote within the March 9, 2022 Order, this Court noted "that it has no realistic option other than to impose a sanction on Father, pursuant to 23 Pa.C.S. §5323(g), to attempt to "coerce [him] into compliance with the court's order[s]". *See, Knaus v. Knaus,* 387 A.2d 669, 672 (Pa. 1956). To be clear, and notwithstanding Father's disregard of other portions of the Orders of Judge Sterling and Judge Saltz, this Court is imposing the sanction in connection with Father's violation of (i) Judge Sterling's July 16, 2021 Order (relating to Paragraph 1, "Legal Custody") and (ii) the undersigned's January 28, 2022 Order. The Court certainly hopes that further sanctions will not be necessary."

[10] Father decided to accept this payment plan option and, as of today's date, has made three of the four scheduled payments.

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Goodman v. Goodman*, 556 A.2d 1379 (Pa. 1989). The sanctions were reasonable, measured and in accordance with 23 Pa. C.S. §5323(g). The Court did not commit error in finding Father in contempt or imposing the foregoing sanctions.

**Issues 16 and 17: The trial court did not err by issuing its March 21, 2022 Order.**

Father avers this Court erred in issuing the March 21, 2022 Order by (i) providing Father the ability to pay his sanction through a payment plan and denying all other requested relief and (ii) failing to have a hearing on the petition.

On March 18, 2022, Father filed *Emergency Request for Stay of March 9, 2022 Order* in which he requested various alternative forms of relief. The Court granted the petition in part (by approving the four-month payment plan) and denying all other requested relief. Father does not specifically state how the Court erred in fashioning its Order other than by failing to conduct a hearing prior to issuing the Order. Father cites to no authority requiring the Court to conduct a hearing in connection with such a motion – presumably because no such authority exists.[11] The Court did not err in issuing its March 21, 2022 Order.

---

[11] Father has criticized the Court for not holding a hearing with respect to his ability to pay prior to issuing the March 9, 2022 Order. Notably, however, the Court *did* conduct a hearing with respect to Father's financial status on March 11, 2022 – two days later – in connection with three *in forma pauperis* petitions filed by Father. The Court concluded that Father had the financial resources to pay the costs and fees associated with his various filings and appeals. Father has appealed these IFP orders (paying the requisite fees and transcript costs) which are currently pending before the Superior Court at dockets 966 EDA 2022, 967 EDA 2022, and 968 EDA 2022.

Case# 2019-06877-502 Docketed at Montgomery County Prothonotary on 05/24/2022 9:27 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## III. CONCLUSION

For above reasons, the court respectfully requests the Superior Court to affirm this Court's March 9, 2022 and March 21, 2022 orders.

BY THE COURT:

_____
HENRY S. HILLES, III, .J.

Copies mailed by the Prothonotary to the following:
Chad Batterman, Self Represented
Silvia Santo, Self Represented

Copies mailed on 05/24/2022 to the following:
Court Administration – Family (interoffice mail and/or email)

_____
Judicial Assistant

20