J-A12008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADAM NEELY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HENDRIKA NEELY | : | |
| | : | |
| Appellant | : | No. 3028 EDA 2024 |

Appeal from the Order Entered October 2, 2024
In the Court of Common Pleas of Chester County
Civil Division at No: 2022-01776-CU

BEFORE: STABILE, J., DUBOW, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 21, 2025**

Appellant, Hendrika Neely ("Mother"), appeals from an order finding her in contempt for failing to return three of the parties' five children she had been withholding in California to Pennsylvania in violation of a previous court order. We affirm.

The trial court accurately recounted the history of this case in its opinion as follows:

> Mother and Father [Appellee Adam Neely] are the parents of five children ages: 17, 15, 11, 8 and 6. On November 8, 2021, Mother drove the three younger children (collectively "the Children") from Pennsylvania to California. She did not tell Father or any of the five children that she was leaving for California with the Children. The two older children thereafter resided with Father in Chester County, Pennsylvania, and the Children resided with Mother in California, and at times Hawaii.
>
> On March 10, 2022, Father filed a Complaint for Custody seeking shared legal and physical custody of all five children. On September 1, 2022, Father filed a petition seeking primary physical custody of all five children. On November 16, 2023,

following an eight (8) day custody trial at which the parties were represented by counsel, the Honorable Louis A. Mincarelli entered a Custody Order. At Paragraph 2 of the November, 2023 Custody Order, the trial court ordered that Father shall have primary physical custody and Mother partial physical custody of all five children. (Custody Order, dtd. 11/16/23). Judge Mincarelli further ordered that "[i]f Mother is not using frequent flyer miles for the children's transportation, Mother shall be responsible for the transportation costs ...' to and from Mother's residence." Finally, at Paragraph 9, Judge Mincarelli ordered that the Children "be enrolled in public school in Pennsylvania forthwith." (Id.)

Mother appealed Judge Mincarelli's November 2023 Order and in connection therewith requested a stay pending appeal. On February 14, 2024, this Court dismissed Mother's appeal. Judge Mincarelli denied the stay request and offered the following factual history of this matter, which the trial court believes provides important context for the present appeal. As Judge Mincarelli stated following his eight (8) day custody trial:

> Mother periodically blocks Father's phone number from her phone number, thereby preventing continuing contact between [the Children] and Father. Mother also hangs up on the FaceTime calls with Father and the older children. Mother frequently moves [the Children] from one state to another. One of the children testified that Mother sometimes leaves them alone in Hawaii when she works as a doula. There is no evidence that the school aged children receive home school instruction when Mother is working. Mother lied to Father and all of the children when she left Pennsylvania with [the Children] in November of 2021. She stated she was taking them to the library and would return with lunch. She took the three children to California. Mother showed disregard for the well-being of the older children by leaving them in a cold house in the winter. She cancelled the propane heating service and utilities without telling anyone. Mother never phoned texted or emailed her older children ... to inquire about their emotional health after she left with their siblings without giving them a chance to say goodbye ... Father provides a positive stable and loving family life for the children. By contrast, Mother frequently

travels to and from Hawaii and California with [the Children] leaving them with people they don't know well. There was testimony that Mother yells and has hit... the youngest child. The children testified that Mother is negative and judgmental. The younger children will benefit from relocating back to Pennsylvania. They will live with their siblings and be cared for by Father who provides a stable environment... [the older children] attend public school. They participate in sports and school activities. Father intends to enroll the younger children in public school. Relocating will have a positive impact on the educational development of [the Children].

Order, dtd. 12/13/24, at fn. 1.

Mother, however, failed to return the Children to Father in Pennsylvania. Father had to resort to the filing of the Petition for Enforcement and Contempt on December 28, 2023. At Mother's request, the matter was continued twice before being scheduled before the undersigned March 28, 2024. Mother failed to appear at the hearing, and a bench warrant was issued for her arrest. Even after the bench warrant was issued, Mother failed to return the Children to Father or abide by the terms of the trial court's orders. It was not until over two weeks later and after police involvement, that on April 16, 2024, Mother released the Children into the care of their Father's partner in California, who had traveled there to retrieve the Children.

On May 2, 2024, the trial court scheduled a contempt hearing for June 24, 2024. On May 6, 2024, Mother filed a motion to quash bench warrant. On May 14, 2024, Mother filed a motion for continuance of the contempt proceeding, which was granted. The proceeding was rescheduled to July 3, 2024. On May 28, 2024, Mother filed another motion for continuance, which was also granted. The proceeding was rescheduled to August 5, 2024. Father then filed a motion for continuance and the matter was rescheduled to September 23, 2024, when the hearing finally occurred.

Following the hearing, the trial court … found Mother to be in contempt for her failure to return the Children to Father for five

(5) months after the issuance of the November 2023 Custody Order.

Pa.R.A.P. Opinion, 12/13/24, at 1-4.

The order holding Mother in contempt directed her to (1) pay $24,241.50 to Father's counsel in monthly increments of $200.00 for attorney fees that Father incurred in enforcing the court's orders; (2) pay Father $2,309.17 for reimbursement of costs incurred in securing the children's return; and (3) pay a fine of $500.00 for willful contempt.

Mother timely appealed her contempt order to this Court. Both Mother and the trial court complied with Pa.R.A.P. 1925. Mother raises three issues in this appeal:

> 1. The Trial Court's Order of October 2, 2024, is an abuse of discretion because there is no evidence that [Mother] acted either volitionally nor with wrongful intent when she was unable to financially afford returning the children to Pennsylvania.
>
> 2. The Trial Court's Order of October 2, 2024, is improperly punitive and should be reversed in that it includes monetary payments to [Mother's] counsel which were amounts other than those directly related to the enforcement of the order which [Mother] was later found in contempt.
>
> 3. The Trial Court abused its discretion when it entered contempt amount which [Mother] had no present ability to pay at the time the order was entered and is extreme in its award of sanctions without regard to the actual costs incurred by the opposing party.

Appellant's Brief at 8-9.

In her first argument, Mother contends that the contempt order against her is an abuse of discretion because she was incapable financially of returning the children to Pennsylvania. We disagree.

- 4 -

The Court reviews an order holding a party in contempt for an abuse of discretion. *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009). A court "abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. Each court is the exclusive judge of contempt against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013). A finding of civil contempt requires proof that (i) the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (ii) the contemnor's violation was volitional and (iii) the contemnor acted with willful intent. *Lachat v. Hinchcliffe*, 769 A.2d 481, 489 (Pa. Super 2001).

Mother admits in her brief that she had notice of the order to return the children to Pennsylvania. Appellant's Brief at 18 ("[Mother] accepts there was a clear directive to return the children to Pennsylvania for Father's custodial time"). Moreover, the terms of the order were clear and specific and left no doubt about what Mother was required to do.

Mother claims that her violation of the order was not volitional and that she did not act with willful intent. The trial court's opinion demonstrates the speciousness of this argument:

> The trial court's order of November 2023 made it clear that Father was awarded custody of the Children and they were to be returned to him in Pennsylvania and immediately enrolled in school. Mother's request for a stay of the enforcement of that November 2023 Custody Order was denied. Father filed his Petition for Contempt and Enforcement. Mother did nothing to comply.

- 5 -

Instead, Mother made several requests of the trial court for continuances of the contempt proceeding. She offered a variety of explanations for why she could not appear at the hearing.

- February 22, 2024— Mother represented to the court that she could not attend the hearing because she lived in California and had a prior commitment that could not be rescheduled.

- March 19, 2024 - Mother requested to appear remotely for the proceeding because the Children were homeschooled and would be unable to participate in state testing. Although Mother stated she could not afford an airplane ticket, she expressed concern that "even if I had the money" the hearing could be rescheduled due to inclement weather.

- March 27, 2024 - Mother stated that she intended to have an attorney represent her in the proceedings and had been unable to obtain counsel as of the date of the request.

Although she was directed to appear before the undersigned with the Children on March 28, 2024 or a bench warrant would be issued, Mother failed to appear. A bench warrant, as she had been warned, was issued. Even then, Mother failed to act.

All of this occurred during the same time Mother sent an e-mail to Father that left no doubt that her offered excuse at the contempt hearing of "an inability to pay" was not credible. On March 26, 2024, Mother wrote as follows:

> Adam,
>
> The kids really want to go see Joshua so we're going to take a last minute trip [sic] Utah for their spring break. Thankfully I got a little money for my birthday …
>
> Hendrika

(Ex. F-1S).

Mother testified at the hearing that she took the trip to Utah to visit her son Joshua because she "missed" him after his two year mission trip. There was no testimony or recognition from Mother that Father had not seen the Children since 2021. The evidence clearly indicated that Mother knew what she was doing and more important what she was not doing as directed by the trial court.

As for Mother's claim of "inability to pay", the testimony she offered at the hearing was that she has held jobs as a doula and a model. She did not indicate any inability to secure any other type of job, even temporarily, in order to provide for the Children's return. She offered no valid explanation for why there were no attempts made to drive the Children back to Pennsylvania — the same means she used to take the Children from their Father years ago and the means she used to visit her son in Utah.

Ms. Cohen, Mother's friend and a California licensed attorney, testified that she provided Mother with funds for her birthday. Mother contended that that money was earmarked for her to travel to visit family and she did not believe she could use the funds to return the Children to Father. The trial court did not find this testimony credible nor did the trial court believe that if Mother had requested of a licensed attorney that the "gifted" money be used to comply with a court order that the request would have been denied. Notably, there was no testimony from Ms. Cohen or Mother that any such request was made.

Mother also testified that she made a $200 required contribution to her church. She offered no testimony that she requested an extension for that contribution, to be relieved of the obligation due to her circumstance or that she asked for help in returning the Children.

During cross-examination, Mother testified that she was currently residing in Hawaii with her boyfriend. She offered that he had provided the funds to travel. She did not testify that she requested assistance returning the Children from him.

In sum, although Mother attempted to excuse her behavior claiming she was unable financially to return the Children, she failed to offer any satisfactory explanation for why she did nothing to even attempt to comply. Furthermore, at no point did Mother make any filing with the trial court with regard to her inability to pay for the Children's return. Rather, the record is clear that

> Mother's continuous attempts to delay the return of the Children had little to do with finances and everything to do with her belief that the Children should remain with her.

Pa.R.A.P. Opinion, 12/13/24, at 6-8.

Father's brief delineates additional evidence of Mother's willful intent. For example, (1) prior to the November 2023 custody order, Mother traveled frequently with the children to Hawaii, Utah, Idaho, Texas, and various parts of California, indicating Mother had the ability to return the children to Father in Pennsylvania; (2) after the November 2023 order, Mother claimed she "lacked the means" to procure flight tickets to transport the children to Pennsylvania despite her ability to travel frequently prior to the order; (3) eighteen days after saying that she lacked the "means to procure flight tickets," Mother gifted the three youngest children Disneyland tickets for Christmas and then later went on a trip to Disneyland with them; (4) in February 2024, Father offered to pay for the children's plane tickets to Pennsylvania; (5) on April 12, 2024, Father offered to pay for Mother's and the children's plane tickets to Pennsylvania, but Mother did not respond to the offer; (6) Mother's credit card statements showed her trip to Utah for spring break in 2024 and other unnecessary purchases such as car washes and recurring Audible, Godaddy.com, and Casting Networks charges; and (7) Mother's two bank account statements show that she deposited $2,513.93 between late February and late April 2024, around the time of the March 28, 2024 order directing Mother to appear in court with her children, an amount

that would have more than covered the cost of plane tickets to Pennsylvania. *See* Father's Brief at 16-32 (citations omitted).

The record thus supports the court's decision to hold Mother in contempt for willfully and intentionally violating the court's order to return the children to Pennsylvania.

In her second and third arguments, Mother objects to the monetary sanctions imposed by the court on the grounds that (1) they included amounts not directly related to enforcement of the order for which she was held in contempt, and (2) she has no present ability to pay them. The court properly rejected these arguments.

The legislature has prescribed that when the court finds an individual in contempt for failing to comply with a custody order, contempt shall be punishable by one or more of the following: (i) imprisonment for a maximum of six months, (ii) a fine of not more than $500, (iii) probation for a maximum of six months, (iv) an order for nonrenewal, suspension or denial of operating privilege under 23 Pa.C.S.A. § 4355 (relating to denial or suspension of licenses), and (v) counsel fees and costs. 23 Pa.C.S.A. § 5323(g).

The trial court reasoned:

Father, who suffers from a severe back injury, was unable to fly to California to retrieve the Children after Mother failed to return them to Pennsylvania. The decision to have one of the Children's older siblings travel with Father's companion was for the benefit and well-being of the Children and would not have been necessary if Mother had returned the Children as directed. The trial court found certain of the costs and fees incurred in the enforcement efforts and the Children's transition from California to be

reasonable and the result of Mother's repeated failures and misconduct and awarded the same. Nonetheless, the court recognized that payment of the totality of the fees and costs would be most appropriately paid by Mother over time. The trial court directed Mother to pay only $200/month until the fees were paid in full with no time limit for doing so. The trial court's sanction was directly connected to Mother's misconduct and the enforcement of the trial court's orders and was reasonable in both the amount and the time provided for Mother to make payment.

Pa.R.A.P. Opinion, 12/13/24, at 9.

We hold that the trial court properly exercised its discretion in imposing monetary sanctions. The record demonstrates that Mother willfully defied court orders to return the children to Pennsylvania. She forced Husband to spend over $24,000.00 in attorney fees to enforce these orders as well as more than $2,300.00 to coordinate with authorities in California in facilitating the children's return. The court correctly required Mother to pay these sums and a fine of $500.00 for acting in contempt of court orders. Furthermore, as the court noted, the sanctions were not overly burdensome because the court permitted Mother to pay the sanctions in small monthly increments of $200.00.

For these reasons, we affirm the court's order holding Mother in contempt.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/21/2025</u>